UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
JANE DOE,[1]

                Plaintiff,

      - against -

CUBA GOODING, JR.,

                Defendant.

---------------------------------------------------------------X

Case No.

**COMPLAINT**

PLAINTIFF DEMANDS
A TRIAL BY JURY

Plaintiff, proceeding pseudonymously as "Jane Doe," by and through her attorneys, Nisar Law Group, P.C. and Allred, Maroko & Goldberg, hereby complains of the Defendant, Cuba Gooding, Jr., upon information and belief, as follows:

### NATURE OF THE CASE

1. Plaintiff complains pursuant to <u>New York City's Victims of Gender-Motivated Violence Protection Law</u>, New York City Administrative Code § 10-1101, *et seq.* ("VGM"), and seeks damages to redress the injuries Plaintiff has suffered as a result of being a victim of violence committed on the basis of gender, and due, at least in part, to an animus based on gender.

### JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the act(s) of violence

---

[1] Plaintiff has concurrently filed with this Complaint a motion requesting leave to proceed pseudonymously.

1

committed on the basis of gender, occurred within this district.

## PARTIES

5. At all times relevant, Plaintiff Jane Doe ("Plaintiff") is an individual who was a resident of the State of New York. Plaintiff is female.

6. At all times relevant, Defendant Cuba Gooding, Jr. ("Defendant") is an individual who, upon information and belief, was a resident of the State of California. Defendant is male.

7. Plaintiff and Defendant are herein referred to together as "the parties."

## MATERIAL FACTS

8. In or around August 2013, Plaintiff (who was an adult at the time) lived and worked in New York City.

9. On August 24, 2013, Plaintiff met a friend for dinner and thereafter went to a restaurant/ lounge in the Greenwich Village neighborhood of Manhattan.

10. About an hour after arriving at restaurant/ lounge, Plaintiff and her friend went to the VIP lounge section. While in the VIP lounge, Plaintiff was approached by Defendant who introduced himself and invited her and her friend to join him and his friends at their (Defendant and his friends') table. Plaintiff and her friend joined them.

11. Shortly thereafter, he told Plaintiff that he and his friends were going to The Mercer and invited her and her friend to join them for drinks. By way of background, The Mercer is a hotel, which also includes a restaurant and bar on the ground level. Plaintiff understood that she and her friend would be joining Defendant and his friends at the restaurant or bar. The Mercer is approximately a quarter mile from the restaurant/ lounge where they were and is located in the Soho neighborhood of Manhattan.

12. Defendant then got up and left the table. Plaintiff was talking to someone when a man who appeared to be a security guard approached the table and told her that Defendant

wanted her to meet him outside in a cab. Plaintiff spoke with her friend, and her friend confirmed that she would meet them there for drinks shortly.

13. Plaintiff left the restaurant/ lounge through the front entrance and joined Defendant in a cab. When they arrived at The Mercer (which was only a short drive away), Defendant told Plaintiff to get out at the side entrance so that he could get out a different entrance so as to "avoid the paparazzi" (according to him).

14. Once inside the The Mercer, Plaintiff stood in the lobby. Once Defendant saw her, he motioned for Plaintiff to join him in the elevator. Defendant told Plaintiff that he needed to change his clothes. Plaintiff suggested that she wait downstairs, however, Defendant told her that he would "be quick."

15. Defendant's hotel room was on the fifth floor. Defendant and Plaintiff exited the elevator and entered his room, which was down the hallway from the elevator bank. Once they entered, Plaintiff told Defendant that her friend was joining them for drinks downstairs in an effort to suggest that they leave to head back down soon and politely convey that she did not have any interest in staying in his room.

16. Nevertheless, Defendant put on music (Mumford & Sons, to be specific), and took a position between her and the hotel room door. Defendant then began taking his clothes off. Upon Defendant beginning to undress, Plaintiff told him that she had to leave to meet her friend downstairs and began standing up from the edge of the bed where she was sitting and attempted to move towards the door.

17. As Plaintiff attempted to stand up, Defendant blocked her from the door and pushed her onto the bed. Plaintiff was wearing a halter top dress that evening. Defendant finished taking off his clothes (he was now completely naked) and forcibly and without consent put one hand in her halter top to touch Plaintiff's breasts and one hand up her dress.

3

18. Plaintiff told him "no" and tried to push his hands away. However, Defendant ignored her and forcibly stroked her genitals under her underwear. At this point, Defendant became physically aggressive and each time Plaintiff pushed Defendant's hands away, he forcibly placed them back on her. Plaintiff told Defendant "no" numerous times but he wouldn't stop.

19. Defendant then forcibly pushed Plaintiff onto her back on the bed, during which Defendant, without invitation or consent, aggressively removed Plaintiff's underwear and penetrated Plaintiff's vagina with his erect penis. While penetrating Plaintiff, he pinned her down on the bed by holding her arms. Further, he did not put on a condom before doing this. Defendant sexually assaulted and raped Plaintiff until he ejaculated. It did not take Defendant long to ejaculate.

20. Plaintiff remained on the bed after ejaculation and put her breasts back into her halter top and covered herself. Immediately after ejaculating, Defendant went to the bathroom. Plaintiff began to crawl in order to get off the bed and leave, however, Defendant returned from the bathroom (still naked) and got on the bed. As Plaintiff was attempting to get off the bed and get away from Defendant, Defendant, without her consent, got on top of Plaintiff from behind and penetrated Plaintiff anally with his penis. Defendant grabbed Plaintiff's hips so as to prevent her from leaving the bed. Plaintiff told Defendant "no" many times, but Defendant did not stop.

21. Defendant ejaculated again and upon ejaculation, laid on the bed. Plaintiff was afraid to move in fear that Defendant might rape her a third time. Nevertheless, Defendant fell asleep almost immediately, upon which Plaintiff went to the bathroom to clean herself. However, at this point she realized that Defendant had woken up as she heard him rustling in the bed.

4

22. Plaintiff was in fear that she might be raped again, told Defendant she had to head downstairs in order to meet her friend, and hurriedly left the hotel room.

23. Once downstairs, Plaintiff looked for her friend but could not find her. Plaintiff texted her friend and learned that her friend was still at the restaurant/ lounge where they first met Defendant. Plaintiff then returned to the restaurant/ lounge by cab (which was a short ride). Once at the restaurant/ lounge, she met up with her friend, and shortly thereafter, went home.

24. Rape and sexual assault are, by definition, actions taken against the victim without the victim's consent. Without consent, sexual acts such as those alleged here are a violation of the victim's bodily autonomy and an expression of the perpetrator's contempt for that autonomy. Coerced sexual activity is dehumanizing and fear-inducing. Malice or ill will based on gender is apparent from the alleged commission of the act itself. Animus inheres where consent is absent. *See Breest v Haggis*, 161137/17, 9783, 2019 N.Y. App. Div. LEXIS 9433, at *18 (N.Y. App. Div. 2019).

25. The act or acts complained of demonstrate Defendant's animus on the basis of gender.

26. Defendant's actions and conduct were intentional and intended to harm Plaintiff.

27. As a result of Defendant's treatment of Plaintiff, she has suffered emotional distress.

28. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

29. As a result of the above, Plaintiff has been damaged in an amount in excess of the jurisdiction of the Court.

30. Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff demands Punitive Damages against Defendant.

## AS A FIRST CAUSE OF ACTION
## UNDER THE VGM

31. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

32. The VGM provides a civil cause of action for victims of crimes of violence "committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender." New York City Administrative Code § 10-1103.

33. Under the VGM, the term "crime of violence" is defined as "an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law … whether or not those acts have actually resulted in criminal charges, prosecution, or conviction."

34. Defendant subjected Plaintiff to a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on gender, causing her to suffer injury.

## JURY DEMAND

35. Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant:

A. Declaring that Defendant engaged in unlawful practices prohibited by New York City's Victims of Gender-Motivated Violence Protection Law, and that Defendant committed a crime of violence motivated by gender against Plaintiff;

B. Awarding damages to Plaintiff resulting from Defendant's unlawful act(s) and to otherwise make her whole for any losses suffered as a result of such unlawful practices at the hands of Defendant;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury,

distress, pain and suffering and injury to her reputation in an amount to be proven;

D.   Awarding Plaintiff punitive damages;

E.   Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action;

F.   Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendant's unlawful practices.

Dated:  New York, New York
        August 17, 2020

                                                    **NISAR LAW GROUP, P.C.**

                                          By:   _____
                                                Casey Wolnowski, Esq.
                                                570 Lexington Ave., 16th Floor
                                                New York, New York 10022
                                                Ph: (646) 449-7210
                                                Fax: (877) 720-0514
                                                Email: cwolnowski@nisarlaw.com

                                                    **ALLRED, MAROKO & GOLDBERG**

                                          By:   _____
                                                Gloria Allred, Esq.
                                                305 Broadway, Suite 607
                                                New York, New York 10007
                                                Ph: (212) 202-2966
                                                Fax: (323) 653-1660
                                                Email: gallred@amglaw.com
                                                *Attorneys for Plaintiff*