UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------X
JANE DOE,                                          Case No.: 20-cv-06569 (PAC)



 v.s.



 CUBA GOODING, JR.,

     *Defendant*.
--------------------------------------------------X




**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANT CUBA GOODING, JR.'S MOTIONS</u>**






Edward V. Sapone, Esq.
Monica I. Sapone, Esq.
Sapone & Petrillo, LLP
Attorneys for Defendant
Cuba Gooding, Jr.
40 Fulton Street, 17th Floor
New York, New York 10038
Tel: (212) 349-9000
Email: ed@saponepetrillo.com

*On the Brief*: Daniella R. Sapone
    Student Intern

## Table of Contents

PRELIMINARY STATEMENT....................................................................................................1

POINT ONE

THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE GIVEN THAT
PLAINTIFF'S USE OF THE VGM ALMOST SEVEN YEARS LATER IS UNREASONABLE
AND RECTIFIED NO SERIOUS INJUSTICE, AND DEFENDANT WILL SUFFER UNFAIR
PREJUDICE THE VGM AS APPLIED HERE VIOLATES DEFENDANT'S DUE PROCESS
RIGHTS..…. ...........................................................................................................................4

POINT TWO

THE COURT SHOULD ORDER THAT THE FILINGS IN THIS CASE BE AMENDED
TO REFERENCE PLAINTIFF AND HER WITNESS BY THEIR NAMES INSTEAD OF BY
PSEUDONYM "JANE DOE" AND THAT ALL FILINGS REFERENCE REAL NAMES OF
PEOPLE ...............................................................................................................................12

CONCLUSION  ....................................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                      **Page(s)**

*Bd. of Regents of State Coils v. Roth, 408 U.S. 564 (1972)* ...............................................................*5*

*Goldberg v. Kelly, 397 U.S. 254 (1970)* ..............................................................................................*5*

*Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982)* .......................................................................*5*

*In re World Trade Center Lower Manhattan Disaster Site, 758 F.3d 202 (2d Cir. 2014).* ...........*9*

*Gallewski v. H. Hentz & Co., 301 NY 164 (1950).* ..........................................................................*9-10*

*Doe v. Blue Cross & Blue Shield United, 112 F.3d 869 (7th Cir. 1997)* ......................................*12*

*Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185 (2d Cir. 2008).*......................................*12-14*

*Doe v. Delta Airlines Inc., 13 Civ. 6287 (PAE) (S.D.N.Y. Apr. 21, 2015)* ....................................*12*

*Doe v. McLellan, CV 20-5997 (GRB) (AYS) (E.D.N.Y. Dec. 10, 2020)*..................................*13-14*

*Doe v. Skyline Automobiles Inc., 375 F.Supp3d 401 (S.D.N.Y. 2019)* .............................*12, 14-16*

*Doe v. Solera, 18 Civ. 1769 (ER) (S.D.N.Y. Jan. 20, 2021)* ........................................................*14*

*Doe v. Weinstein, 484 F.Supp 3d 90 (S.D.N.Y. 2020)* ...................................................................*13-14*

*North Jersey Media Group, Inc. v. Doe Nos. 1-5, 2012 WL 5899331 (S.D.N.Y. 2012)*..............*16*

*Albany Area Bldrs. Assn. v Town of Guilderland, 74 NY2d 372, 377 (1989).*...............................*8*

*Hymowitz v Eli Lilly & Co., 73 NY2d 487 (1989).* ............................................................................*9*

*Jancyn Mfg. Corp. v County of Suffolk, 71 NY2d 91 (1987).* ..........................................................*8*

*Louks v. Standard Oil Co., 120 N.E. 198 (N.Y. 1918)*.......................................................................*5*

*McCarthy v. Volkswagen of Am., 55 NY2d 543 (1982)* ...................................................................*7*

*Engelman v. Rofe, 194 AD3d 26 (1st Dep't 2021)* ............................................................................*6*

*New York City Health & Hosps. Corp. v Council of City of N.Y., 303 AD2d 69 (1st Dep't 2003)*...............*8*

*Matter of Council of City of N.Y. v Bloomberg, 16 AD3d 212 (1st Dep't 2005)*............................*8*

*Robinson v. Robins Dry Dock & Repair Co., 238 NY 271 (1924).* ..........................................*9-10*

*Krioutchkova v Gaad Realty Corp.*, 28 AD3d 427 (2d Dept 2006)................................................5

*Sharon B. v Reverend S.*, 244 AD2d 878, 879 (4th Dept 1997).................................................5

*Vastola v. Maer*, 48 AD2d 561, 564 (2d Dept 1975). ................................................7

*Yong Wen Mo v Gee Ming Chan*, 17 AD3d 356 (2d Dept 2005)................................................5

*Cordero v. Epstein*, 22 Misc.3d 161, 162 (Sup. Ct. NY. 2008)................................................6-9

**Statutes and other Authorities**

U.S. Const. Art. I, Amd. XIV ................................................4, 10

FRCP Rule 10(a) ................................................12

FRCP Rule 12(b)(1) and (6) ................................................4

FRCP Rule 12(b) ................................................4

*NY Const art I, § 6*................................................*10*

*22 NYCRR 500.27*................................................*9*

*N.Y. CPLR 215(3)* ................................................*5, 6*

Gender-Motivated Violence Protection Law, New York City Administrative Code § 10-1101 ..........*passim*

## PRELIMINARY STATEMENT

On August 13, 2020, news stories of Oscar-winning, Hollywood actor, Cuba Gooding, Jr.—famous for coaching a young, handsome Tom Cruise on how to emphatically say, S*how me the money!*—exploded on television and computer screens and at newsstands across New York City. News outlet CNN released television, internet and print news reports about Cuba Gooding, Jr. Sadly, the news cycle didn't detail a new Cuba Gooding, Jr. movie. It did a deep dive into groping accusations against the Hollywood star. Groping accusations of no less than 30 women. Then the next day, on August 14, 2020, in case anyone missed it the day before, an on-line news publication named *Independent*, slammed Mr. Gooding, Jr. with the same accusations.

Three days later, on August 17, 2020, another woman, the thirty-first woman to be precise, entered the picture.  This woman, who used the name *Jane Doe* to hide from the public her real name, instructed high-profile lawyers Casey Wolnowski and Gloria Allred to sign a civil Complaint alleging that Mr. Gooding, Jr. groped her too after luring her to his Manhattan hotel room; according to Ms. Doe, he also vaginally raped her, ejaculated, and then moments later anally raped her, and again ejaculated.

Six-and-a-half months before this alleged hotel room encounter, on January 22, 2020, New York City was on notice about the actor and his alleged penchant for groping women. The New York Times published an article in print and on the internet featuring seven accusations of unwanted sexual touching, bringing the number of women, at that point in time, to twenty two.

At some point after the alleged incident of August 24, 2013, Plaintiff went to the NYPD, told them her story and tried to have Mr. Gooding, Jr. arrested. A conviction would have made

the future lawsuit a lot easier for Plaintiff. No police offer or prosecutor agreed to arrest or prosecute Mr. Gooding, Jr.

At that point, the next logical step for Plaintiff would have been to sue Mr. Gooding, Jr. She had plenty of time, a full year following the incident, to begin her intentional torts lawsuit. But Plaintiff chose not to sue him. And then she let the applicable one-year statute of limitations elapse.

Fast-forward seven years to 2020. The news was desperate to take a break from the non-stop reports on Covid. Reporters couldn't get enough of the scores of claims against Cuba Gooding, Jr. or the dozens of women speaking out about acts of alleged touching and groping. Mr. Gooding, Jr.'s face looped on the news cycles. His name was featured in print and on blue screens on computers, tablets, and smart phones across New York City.

Fast-forward to August 24, 2020. Plaintiff—who had chosen not to sue Mr. Gooding, Jr. in 2013 when he allegedly raped her—finally sued him.  Taking advantage of the seven-year statute of limitations of New York City's Victims of Gender-Motivated Violence Protection Law (the "VGM"), she waited until one week shy of seven years to do what she could have done seven years earlier.

An overview of the relevant law reveals that for every tort under New York law there is an available remedy for plaintiffs. For civil defendants, the 14th Amendment and New York State Constitution and their Due Process principles can be utilized to protect their property interests. Under the law, a case gives rise to a property interest.  Due Process offers protection to defendants who may suffer prejudice from a lawsuit filed later than necessary.

Mr. Gooding, Jr. has been severely prejudiced by Plaintiff's having waited almost seven years to sue him. As evidenced throughout his Affidavit, attached as Exhibit B to counsel's Declaration, she prevented him from obtaining witnesses, video surveillance and vital documents without which he cannot sufficiently defend himself.

New York law utilizes the "functionalist approach" to determine whether a plaintiff waited an unreasonably lengthy period of time to commence a lawsuit. New York state courts weigh a defendant's interests in the protections afforded by other available statute of limitations against the need to correct an injustice that a plaintiff might suffer if her stale claims were dismissed.

Using examples of civil rape cases, some plaintiffs had suppressed a traumatic rape; others did know that what had happened to them constituted a rape; still, others, did not understand that a particular person, such as a husband, can be sued. In these examples, after extensive therapy, the plaintiffs came to recall the events, understand that the events constituted torts or learned that even a husband can be sued for rape.

Plaintiff in this case is unlike the plaintiffs in these examples, and she fails to demonstrate any of the characteristics of the kind of plaintiff for whom the VGM was enacted. Plaintiff waited almost seven years; yet no exceptional circumstances forced her to wait. Plaintiff was a woman in her 30's. She had friends, access to lawyers and law enforcement. She was of sound mind to bring suit whenever she wanted to. Plaintiff had available to her a traditional lawsuit by which she could have accused Mr. Gooding, Jr. of the same misconduct of which she now accuses him; she chose not to, and instead chose to forego her right to sue him for the intentional

torts she claims he committed. Plaintiff choosing to sue Mr. Gooding, Jr. almost seven years later will not rectify any serious injustice; the opposite is true.

Therefore, the VGM as applied in this case violates Mr. Gooding, Jr.'s rights under the Due Process Clauses of the 14th Amendment and the New York State Constitution Article I, § 6. Thus, the Court should dismiss the Complaint with prejudice.

## POINT I

### THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE GIVEN THAT PLAINTIFF'S USE OF THE VGM ALMOST SEVEN YEARS LATER IS UNREASONABLE AND RECTIFIED NO SERIOUS INJUSTICE, AND DEFENDANT WILL SUFFER UNFAIR PREJUDICE, THE VGM AS APPLIED HERE VIOLATES DEFENDANT'S DUE PROCESS RIGHTS

Under Rules 12(b)(1) and (6) and 12(c) of the Federal Rules of Civil Procedure, the Court should dismiss with prejudice the Complaint.  The Complaint contains one cause of action under the VGM that carries a seven-year statute of limitations. *See Declaration of Edward V. Sapone, Esq., and the Complaint at par. 31-34 annexed as Exhibit A.*  New York state's "functionalist approach" balances a defendant's interest in a case being commenced as soon as possible against any injustice a plaintiff would suffer should a case be dismissed because she started it years later than necessary. Under this approach, the scale tips in Mr. Gooding, Jr.'s favor. No exceptional circumstances caused Plaintiff to wait almost seven years to bring this suit. She made a decision not to sue Mr. Gooding, Jr., and her stale lawsuit will not rectify any serious injustice. Further, laches helps Defendant's request for dismissal.Therefore, her use of the VGM is unreasonable, and her Complaint should be dismissed.

A.   *Fourteenth Amendment Due Process Clause*

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. *U.S. Const. Art. I, Amd. XIV*.

A plaintiff's ability to bring a cause of action is "created and defined by statutory terms.'" *Bd. of Regents of State Coils. v. Roth*, 408 U.S. 564, 578 (1972); *see also Goldberg v. Kelly*, 397 U.S. 254 (1970) (finding that claim of entitlement to payments was grounded in statute defining eligibility for them and was a property right. Under uncontroverted U.S. Supreme Court doctrine, a potential plaintiff has a property right to a cause of action. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982). The Supreme Court has held that "a cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause." *See id.*; *see also Loucks v. Standard Oil Co.*, 120 N.E. 198, 201 (N.Y. 1918) ("A right of action is property").

B.   *N.Y. CPLR 215(3)*

Under N.Y.  CPLR 215 (3), a lawsuit claiming intentional torts, including sexual assault, must be brought within one year of the alleged misconduct. *See Krioutchkova v Gaad Realty Corp., 28 AD3d 427 (2d Dep't 2006); Yong Wen Mo v Gee Ming Chan, 17 AD3d 356* (2d Dep't 2005); Sharon B. v Reverend S., 244 AD2d 878, 879 (4th Dep't 1997) (explaining that "[r]egardless of how it is pleaded, sexual abuse is an intentional tort subject to the one-year Statute of Limitations").

C.  *Cordero v. Epstein, 22 Misc.3d 161, 162 (Sup. Ct. NY. 2008):  N.Y. County Supreme Court Dismisses Complaint By Which Plaintiff Sues Under NYC Statute With Six-Year Statute of Limitations Instead of Suing Under the N.Y. CPLR With a One-Year Statute of Limitations*

There appear to be no New York Court of Appeals cases that directly tackle the question of whether N.Y. CPLR 215(3), a statewide statute created by the New York Legislature, preempts New York City's VGM and it's seven-year limitations period. The New York County Supreme Court has decided that it does.  *See Cordero v. Epstein*, 22 Misc.3d 161, 162 (Sup. Ct. NY. 2008) (refusing to apply seven-year statute of limitations and granting defendants' motion to dismiss complaint); *c.f. Engelman v. Rofe*, 194 AD3d 26 (1st Dep't 3/4/21)(concluding that because plaintiff's claim is in nature of civil rights cause of action, CPLR 215(3) and it's one-year statute of limitations does not apply, and the VGM's seven-year limitations period does).

Although the Appellate Division trumps the New York County Supreme Court, the facts in *Engelman v. Rofe* are different from the facts of the case at bar. In *Engelman*, the plaintiffs suffered a "series of different sexual attacks." The amended complaint alleged that on multiple dates between 2011 and 2016, the defendant, a voice-over coach, lured female customers to his studio to teach them voice-over coaching sessions. Defendant made "unwanted sexual advances toward plaintiffs, which included forcibly kissing some of the women and touching their breasts, buttocks and groins, and forcing some to touch his penis or buttocks." The court found that plaintiff's VPA claims were in the nature of a civil rights cause of action, and the seven-year statute of limitations applied.

The key fact that distinguishes *Engelman* from the case at bar is that the only plaintiff who waited seven years minus one week to bring suit is the Plaintiff in this case. And although

6

the Supreme Court's *Cordero* decision does not control, it relies heavily upon citations and quotations from Court of Appeals cases.

In *Cordero*, a victim of the late Jeffrey Epstein, sued Epstein, claiming that when she was under 17 years of age he lured her to his Manhattan mansion where he, among other things, got naked, requested a massage, which she gave him, and "pushed her head" to force her to perform oral sex on him.  *Id*. at 163. Plaintiff also alleged that "she engaged in other sexual acts with Epstein in 2000 before she reached the age of 17".  *Id*. Plaintiff amended her complaint, adding acts of violent sexual misconduct under multiple New York City statutes that, similar to the VGM, criminalize acts of violence motivated by gender, and which extended the one-year statute of limitations to a six-year statute of limitations. *See id.*, at 164. Plaintiff also added to the lawsuit additional defendants, including the owners of the building where Epstein lived. *Id.*, at 163.

D.   *The N.Y. Court of Appeals and Preemption, N.Y. State's Transcendent Interest, and the Need for Statewide Uniformity*

The court granted defendants' motion to dismiss. *See Cordero*, 22 Misc 3d at 168.  In doing so, it relied on a legal analysis of statutes of limitations by the Court of Appeals, including a discussion of the preemption doctrine (a local law is unenforceable when it collides with a state statute) and the good judgement of the Legislature.  *See id.*  The court explained that:

> "the action of the City Council extending the statute of limitations for certain intentional torts by creating subclasses of such torts and setting forth longer periods of repose for such subclasses than is provided in article 2 of the CPLR is violative of the preemption doctrine." "Statutes of Limitation are essentially arbitrary time limitations barring the commencement of an action, and they reflect the legislative judgment that individuals should be protected from stale claims." (*quoting McCarthy v. Volkswagen of Am., 55 NY2d 543, 548-49 [1982]).*

*Cordero*, 22 Misc 3d at 168.

The *Cordero* court further explained the purpose of a statute of limitations as discussed in an opinion by the Second Department, which was affirmed by the Court of Appeals:

> "the purpose of the Statute of Limitations is to force a plaintiff to bring his claim within a reasonable time, set out by the Legislature, so that a defendant will have timely notice of a claim against him, and so that stale claims, and the uncertainty they produce, will be prevented." (*quoting Vastola v. Maer*, 48 AD2d 561, 564 [2d Dept 1975], *aff'd* 39 NY2d 1019 [1976]).

*Cordero*, 22 Misc 3d at 168.

Discussing the issues of preemption, a state's transcendent interest, and the need for

statewide uniformity, the *Cordero* court quoted controlling New York Court of Appeals precedent

set forth in *Albany Area Bldrs. Assn. v Town of Guilderland,* 74 NY2d 372, 377 (1989):

> "'Where the State has preempted the field, a local law regulating the same subject matter is deemed inconsistent with the State's transcendent interest, whether or not the terms of the local law actually conflict with a State-wide statute. Such local laws, 'were they permitted to operate in a field preempted by State law, would tend to inhibit the operation of the State's general law and thereby thwart the operation of the State's overriding policy concerns.' (*citing Jancyn Mfg. Corp. v County of Suffolk*, 71 NY2d 91, 97 [1987]).  Moreover, the Legislature need not express its intent to preempt. That intent may be implied from the nature of the subject matter being regulated and the purpose and scope of the State legislative scheme, including the need for State-wide uniformity in a given area . . . . A comprehensive, detailed statutory scheme, for example, may evidence an intent to preempt." (*Citations omitted; see also New York City Health & Hosps. Corp. v Council of City of N.Y.*, 303 AD2d 69 [1st Dep't 2003]; Matter of Council of City of N.Y. v Bloomberg, 16 AD3d 212 [1st Dep't 2005]).

*Cordero*, 22 Misc 3d at 168-69.

Finally, in a final swipe at the New York City statute and its six-year statute of

limitations, the *Cordero* court pointed out the New York State Legislature's authority to make

controlling statewide statutes of limitations for torts that are also crimes and include sexual

misconduct:

> "In Article 2 of the CPLR, the Legislature has set forth a detailed scheme with respect to the time for the commencement of various types of litigation, including a special time limitation for claims involving criminality and sexual misconduct. The Council of the City of New York cannot create its own subclasses of intentional torts and thus modify the detailed scheme created by the Legislature for the entire state. Accordingly, the lengthier periods provided in the Code sections relied upon herein by plaintiff are invalid as violative of the preemption doctrine."

*Cordero*, 22 Misc 3d at 169.

E.    *Parallel Federal and State Caselaw*

In *In the Matter of World Trade Center Lower Manhattan Disaster Site Litig.*, 846 F3d

58, 70 (2d Cir. 2017), the Second Circuit ordered that New York Court of Appeals certify

pursuant to Rule 500.27 of New York's rules the question: "Does the 'serious injustice' standard

articulated in *Gallewski v. H. Hentz & Co.*, 301 NY 164 (1950), or the less stringent

'reasonableness' standard articulated in *Robinson v. Robins Dry Dock & Repair Co.*, 238 NY

271 (1924), govern the merits of a Due Process challenge under the New York State Constitution

to a claim-revival statute?" The New York Court of Appeals accepted certified questions on

February 9, 2017.  *See* 28 NY3d 1159 (2017).

The holding in *Robinson* was slightly more demanding than pure "reasonable[ness]":

Robinson held that the Due Process Clause of the State Constitution is "satisfied if there was an

apparent injustice which 'calls for [a] remedy,' and which is 'reasonable' and not

'arbitrary'" (*Hymowitz*, 73 NY2d at 514, *quoting Robinson*, 238 NY at 279-80). A close reading

9

of *Gallewski* demonstrates that it did not overrule *Robinson*. Instead, it reaffirmed the *Robinson* standard (*see* 301 NY at 175).

The salient important facts fall into the same pattern in *Gallewski* and *Robinson*.

*First*, there existed an identifiable injustice that moved the N.Y. Legislature to act. In *Robinson*, it was the plaintiffs' exclusive reliance on a provision of the workers' compensation law that was struck down by the United States Supreme Court (*see* 238 NY at 279). In *Gallewski*, it was the occupation of the plaintiffs' countries of residence during World War II (see 301 NY at 175). *Second*, plaintiffs were permitted to bring their lawsuits to correct an injustice. The *Robinson* holding confirms the importance of giving a plaintiff additional time to bring a case when circumstances are exceptional and serious injustice would result to plaintiffs not guilty of any fault." *See Robinson*, 238 NY 271 at 174. In *Gallewski,* the extraordinary events of World War II more than satisfied the test.

Here, Plaintiff already had a remedy available to her. According to her, she was forcibly raped by a celebrity in a hotel room. *See* Exhibit A, Complaint, at par. 14, 15; 19-21. She had access to the friend she had been out with that night (*see id*., at par. 23, bar/lounge security (see id., at par. 12.), police officers, high-powered lawyers (*see id*., at p.7, lawyers' signatory page), and much more. Plaintiff already had redress without the VGM and chose not to avail herself of it. She had a full year to bring this lawsuit from August 24, 2013 to August 24, 2014, yet chose not let the year elapse. Respectfully, she let almost the next six years elapse, and then at the 11th hour (one week) of the instant seven-year statute of limitations, she brought this lawsuit.

By waiting so long to sue Mr. Gooding, Jr., Plaintiff  has severely prejudiced him. As evidenced throughout his Affidavit, attached as Exhibit B to counsel's Declaration, Plaintiff has

prevented Mr. Gooding, Jr. from obtaining necessary witnesses, video surveillance and vital documents without which he cannot sufficiently defend himself.

Therefore, the VGM as applied in this case violates Mr. Gooding, Jr.'s rights under the Due Process Clauses of the 14th Amendment and the New York State Constitution Article I, § 6. Thus, the Court should dismiss the Complaint with prejudice.

## POINT II

**THE COURT SHOULD ORDER THAT THE FILINGS IN THIS CASE BE AMENDED TO REFERENCE PLAINTIFF AND HER WITNESS BY THEIR NAMES INSTEAD OF BY PSEUDONYM "JANE DOE" AND THAT ALL FILINGS REFERENCE REAL NAMES OF PEOPLE**

The Court should not allow Plaintiff or her witness to proceed in this case under a pseudonym.  Second Circuit case law and statutory authority favor parties to a lawsuit to proceed in the litigation by their names and not by a pseudonym.

Pursuant to Rule 10(a) of the Federal Rules of Civil Procedure, a "complaint must name all the parties." Fed. R. Civ. P. 10(a). This Rule "serves the vital purpose of facilitating public scrutiny of judicial proceedings." *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 188 (2d Cir. 2008). While not absolute, the Second Circuit has admonished that this Rule "cannot be set aside lightly." *Id.* at 189. "The people have a right to know who is using their courts." *Id.* (quoting *Doe v. Blue Cross & Blue Shield United,* 112 F.3d 869, 872 (7th Cir. 1997)). Indeed, this "right is `supported by the First Amendment.'" *Doe v. Skyline Automobiles Inc.,* 375 F. Supp. 3d 401, 404 (S.D.N.Y. 2019) (quoting *Doe v. Delta Airlines, Inc.,* 310 F.R.D. 222, 224 (S.D.N.Y. 2015)).

The relevant history is clearly explained in *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008). There, the Northern District of New York went through a historical analysis of lawsuits in which litigants used a pseudonym instead of their actual name and how other circuit courts have analyzed such exception. The Court explained that while a party to a lawsuit, in certain circumstances, may use a pseudonym, courts should engage in an analysis of 10 non-exhaustive factors:

> (1) "whether the litigation involves matters that are highly sensitive and of a personal nature";
> (2) "whether identification poses a risk of retaliatory physical or mental harm to the

[plaintiff] or even more critically, to innocent non-parties";
(3) "whether identification presents other harms";
(4) "whether the plaintiff is particularly vulnerable. . ., particularly in light of [her] age";
(5) "whether the suit is challenging the actions of the government or that of private parties";
(6) "whether the defendant is prejudiced by allowing the plaintiff to press [her] claims anonymously";
(7) "whether the plaintiff's identity has thus far been kept confidential";
(8) "whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose [her] identity";
(9) "whether, because of the purely legal nature of the issues presented. . ., there is an atypically weak public interest in knowing the litigants' identities"; and
(10) "whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff."

While the Plaintiff's allegations in the Complaint involve claims of rape and, therefore, may be deemed "highly sensitive and of a personal nature," this factor alone is not dispositive; nor it is clear that she meets any of the other factors which weigh in favor of being granted the right to proceed under a pseudonym. *See Doe v. Weinstein*, 484 F.Supp. 3d 90 (S.D.N.Y. 2020).

In *Doe v. Weinstein*, the court denied the plaintiff's motion to proceed under a pseudonym. There, plaintiff brought allegations of sexual assault. *Id.* The Court agreed with the *Sealed Plaintiff* analysis and stated that the fundamental question is whether the plaintiff has a "substantial privacy" interest that "outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Id.* (*citing Sealed Plaintiff*, 537 F.3d at 189). Plaintiff accused defendant of "harassing his accusers," and also argued that defendant would not be prejudiced because she would reveal her name to him and his attorneys on the condition that they would keep it confidential. *Sealed Plaintiff*, 537 F.3d at 189). However, the Court found that the balance of interests at stake weighed against permitting plaintiff to proceed under a pseudonym, specifically stating that while "[p]laintiff does have an interest in keeping her

identity private. . . [and] that some of the *Sealed Plaintiff* factors weigh in [p]laintiff's favor . . . other factors weigh heavily against anonymity." *See Doe v. Weinstein*, 484 F.Supp. 3d at 93. Similarly in this case, Mr. Gooding, Jr. is a public figure and has been accused of one incident of forcible rape that allegedly occurred more than eight years ago. *See Complaint*, at paragraphs 17-21. Unlike in the *Weinstein* case, there is no evidence or allegations that Mr. Gooding has harassed or threatened any woman accusing him of any misconduct.

In *Doe v. Skyline*, 375 F.Supp.3d 401 (S.D.N.Y. 2019), the court denied plaintiff's motion for anonymity finding that plaintiff had failed to meet her burden. The court specifically noted that although the plaintiff's allegations of sexual harassment, sexual abuse, and discrimination are highly sensitive and of a personal nature, the *Sealed Plaintiff* factors two through ten either fail to support or weigh against granting plaintiff's motion.

Similarly, in this case Plaintiff has failed to satisfy against Mr. Gooding, Jr. factors two through six and eight through 10. *See Doe v. McLellan*, No. CV 20-5997 (E.D.N.Y. 2020) (denying as insufficient plaintiff's motion to proceed anonymously even though plaintiff's allegations of sexual assault were highly sensitive and personal). *See also Doe v. Solera LLC*, 18 Civ. 1769 (ER) (2021) (denying plaintiff's motion to proceed anonymously where she has not met her burden of demonstrating that her "interest in anonymity" outweighs prejudice to defendants and "the customary and constitutionally-embedded presumption of openness in judicial proceedings.")

In *Doe v. McLellan*, plaintiff's generalized claims of harm were not sufficient and evidence was needed to substantiate her claims. Similarly, in Mr. Gooding's case, Plaintiff has failed to provide evidence of how she would be physically or mentally harmed if her name were

14

disclosed in the filings; nor has Plaintiff alleged any other claims as to whether identification

presents other harms.  Therefore, Plaintiff has failed to satisfy factors two and three.  With

respect to factors four and five, Plaintiff is not of a vulnerable age. See *Doe v. McLellan*, No. CV

20-5997 (E.D.N.Y. 2020) (providing that no evidence of a vulnerable age was presented) and

*Doe v. Skyline Automobiles Inc.*, 375 F.Supp.3d 401 (S.D.N.Y. 2019) (noting that plaintiff did not

present evidence that her age was relevant).  Further, Mr. Gooding, Jr. is a private party and a

public figure and, therefore, Plaintiff has no reasonable fear that Mr. Gooding, Jr. with threaten

or harm her.

 With respect to the sixth factor, allowing Plaintiff to proceed under a pseudonym would

place Mr. Gooding, Jr. at a disadvantage.  *See Doe v. Skyline Automobiles Inc.*, 375 F.Supp.3d

401 (S.D.N.Y. 2019), (finding that plaintiff's anonymity would disadvantage defendants during

settlement, discovery and trial); s*ee also Doe v. McLellan*, No. CV 20-5997 (E.D.N.Y. 2020)

(holding that plaintiff's anonymity would make it more difficult to obtain witnesses and witness

testimony, defendant would have less leverage in settlement negotiations, and defendants would

not be able to fully and adequately cross-examine plaintiff). Mr. Gooding, Jr. has a right to

investigate to defend himself. This is largely a "he said/she said" case in which the credibility of

the parties is vital. Plaintiff certainly is benefitting from Mr. Gooding, Jr. remaining in the public

eye, as Plaintiff will no doubt attempt to use testimony from multiple women spoke out

publically against Mr. Gooding, Jr. Further, when a plaintiff who is making accusations is

exposed to public scrutiny, a bedrock of American jurisprudence, the defendant benefits by the

opportunity of members of the public who know her coming forward with information.

Neighbors, former friends, ex-boyfriends, and the like may contribute invaluable information to

benefit a defendant in their investigation. This is especially true relative to the internet a vehicle for voluminous and fast information.

Regarding the eighth and ninth factors, this case involves serious accusations of a violent rape. In accusations of sexual assault, the public's interest in the litigation is furthered by requiring the plaintiff to disclose her identity. *See Doe v. Skyline Automobiles Inc.*, 375 F.Supp.3d 401 (S.D.N.Y. 2019) (finding that plaintiff sexual assault claims involve issues that are of the type that "further the public's interest in enforcing legal and social norms.") (citing *North Jersey Media Group, Inc. v. Doe Nos. 1-5, 8,* No. 12-6152, 2012 WL 5899331 (S.D.N.Y. 2012)). This is not a case involving issues of a purely legal nature which would weigh in favor of allowing Plaintiff to proceed under a pseudonym as the public's interest in knowing the litigants' identities could be weak.  Instead, this case involves factual issues and will involve witness testimony to determine a just resolution. Therefore, Plaintiff's desire for anonymity fails to meet this prong.  *See Doe v. McLellan*, No. CV 20-5997 (E.D.N.Y. 2020) (noting that the public interest in sexual assault is very high).

With respect to the tenth and final factor concerning whether there are any alternative mechanisms for protecting the confidentiality of Plaintiff, she can always ask this very experienced Court to redact or seal testimony, documents or court proceedings should principled reasons to do so arise.  With such options, there is almost no need for Plaintiff to use a pseudonym.  *See Doe v. Skyline Automobiles Inc.*, 375 F.Supp.3d 401 (S.D.N.Y. 2019) (explaining, with respect to *Sealed Plaintiff* factor no. 10, that there are other forms of proceeding, i.e. redaction of document and sealing).

As set forth in *Sealed Plaintiff*, the analysis comes down to a balancing test, i.e. does the

plaintiff have a "substantial privacy" interest that "outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings?"

Here, Plaintiff's desire for, and reasons supporting, privacy has failed to overcome Mr. Gooding, Jr.'s  constitutional rights to transparency in this case.

While Plaintiff has brought allegations of sexual assault that are highly sensitive and of a personal nature, the *Sealed Plaintiff* factors either fail to support, or weigh against, granting Plaintiff's motion.

Therefore, for the foregoing reasons, Defendant's motion to prevent Plaintiff from proceeding under a pseudonym should be granted.

## **CONCLUSION**

For all of the above reasons, Defendant Cuba Gooding Jr. respectfully asks the Court to grant his motions in their entirety.

Dated:          New York, New York
                December 2, 2021

                                        Respectfully submitted,

                                        _/s/Edward V. Sapone_
                                        Edward V. Sapone
                                        Attorney for Defendant
                                        Cuba Gooding, Jr.


cc:     Casey Wolnowski, Esq.
        Gloria Allred, Esq.

18