**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------X   Case No. 1:20-cv-06569-PAC
JANE DOE,

                                        Plaintiff,

                    -against-

CUBA GOODING, JR.,

                                        Defendant.
--------------------------------------------------------------------X


**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS THE COMPLAINT AND**
**TO COMPEL PLAINTIFF TO AMEND THE PLEADINGS**


**NISAR LAW GROUP, P.C.**

Casey Wolnowski, Esq.
*Attorneys for Plaintiff*
One Grand Central Place
60 East 42nd Street, Suite 4600
New York, NY 10165
Direct: (646) 889-1007
Fax: (516) 604-0157
Email: cwolnowski@nisarlaw.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ……………………………………………………............ii

PRELIMINARY STATEMENT ……………………………………………………………1

STATEMENT OF RELEVANT FACTS ……………………………………………………1

ARGUMENT …………………………………………………………………………..2

I:       Defendant's Motion Should be Dismissed as Untimely …………………………...............2

II:      Defendant's Rule 12 Motion Should be Denied on its Merits…………………………...2

         A.       Defendant's Rule 12 Motion is One Seeking Judgment on the Pleadings …………2

         B.       The "Proof" Relied Upon by Defendant in Support of His Motion
                  Should Be Excluded…………………………………………………………4

         C.       Defendant's Rule 12(c) Motion Lacks Merit…………………………………6

         D.       So Much of Defendant's Motion Raising a Laches Defense Should be Rejected.....8

         E.       Defendant's Motion Pursuant to Rule 12(b)(1)…………………………………..10

III:     The Court Should Allow Plaintiff to Proceed Pseudonymously …………………………11

         A.       Proceeding Under a Pseudonym is Justified if the Plaintiff has a Substantial
                  Privacy Interest Which Outweighs the Presumption of Openness in
                  Judicial Proceedings …………………………………………………………..11

                  i.    This Case Involves Matters of a Highly Sensitive and Personal Nature ……...13

                  ii.   Identification Poses a Risk of Retaliatory Harm and Psychological Injury….14

                  iii.  Lack of Prejudice to Defendant …………………………………………18

                  iv.   Plaintiff has Kept her Identity Confidential in the Proceedings ………………20

                  v.    The Public's Interest in Protecting Plaintiff's Identity ………………………21

                  vi.   There in No Alternative Mechanism for Protecting Plaintiff's
                        Confidentiality…………………………………………………………… 22

                  vii.  Remaining Factors Weigh Against Plaintiff or are Neutral …………………23

CONCLUSION…………………………………………………………………………..24

i

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                                 <u>Page(s)</u>

*Alston v. 1749-1753 First Ave. Garage Corp.*,
    No. CV 12-2676 (DRH), 2015 U.S. Dist. LEXIS 182392 (E.D.N.Y. Jun. 30, 2015)…………9

*Anonymous v. Lerner*, 124 A.D.3d 487 (N.Y. App. Div. 1st Dept. 2015)……………………..11-12

*Biro v. Condé Nast*, 807 F.3d 541 (2d Cir. 2015)…………………………………………………23

*BJB Ltd. v. iStar Jewelry LLC*,
    1:19-cv-3748 (ENV) (RER), 2021 U.S. Dist. LEXIS 73590 (E.D.N.Y. Apr. 9, 2021)………..9

*Breest v. Haggis*, 180 A.D.3d 83 (N.Y. App. Div. 1st Dept. 2019)……………………………..8

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002)………………………………….4

*Cleveland v. Caplaw Enters.*, 448 F.3d 518 (2d Cir. 2006)…………………………………...3

*Cordero v. Epstein*, 869 N.Y.S.2d 725 (N.Y. Sup. Ct. (N.Y. Cnty.) 2008)………………………6

*Crook v. Sanchez*,
    CV 13-328 (JFB) (WDW), 2014 U.S. Dist. LEXIS 178981 (E.D.N.Y. Feb. 12, 2014)………..10

*Deborah S. V. Diorio*, 583 N.Y.S.2d 872 (N.Y. City Civ. Ct. 1992)……………………………14

*Doe v. Amherst Cent. School Dist.*, 196 A.D.3d 9 (N.Y. App. Div. 4th Dept. 2021)………………13

*Doe v. Berg*, 15-cv-9787, 2016 U.S. Dist. LEXIS 198309 (S.D.N.Y. Feb. 10, 2016)…………….20

*Doe v. Bloomberg L.P.*, 2021 N.Y. Slip Op 06754,
    2021 N.Y. App. Div. LEXIS 6797 (N.Y. App. Div. 1st Dept. 2021)………………………….18

*Doe v. City of New York*, 201 F.R.D. 100 (S.D.N.Y. 2001)…………………………………..15-16

*Doe v. Colgate Univ.*,
    No. 15-CV-1069, 2016 U.S. Dist. LEXIS 48787 (N.D.N.Y. Apr. 12, 2016)…………...…13, 14

*Doe v. Del Rio*, 241 F.R.D. 154 (S.D.N.Y. 2006)……………………………………………..…23

*Doe v. E. Irondequoit Cent. Sch. Dist.*,
    16-CV-6594 (CJS), 2018 U.S. Dist. LEXIS 76798 (W.D.N.Y. May 7, 2018)…………………2

*Doe v. Good Samaritan Hosp.*, 66 Misc. 3d 444 (N.Y. Sup. Ct. (Nassau Cnty.) 2019)…………...12

*Doe v. Hallock*, 119 F.R.D. 640 (S.D. Miss. 1987)…………………………………………………23

*Doe v. Hobart & William Smith Colls.*,
  6:20-CV-06338 EAW, 2021 U.S. Dist. LEXIS 52371 (W.D.N.Y. 2021)……………….....15, 22

*Doe v. Nygard*, 20 Civ 6501 (ER), 2020 U.S. Dist. LEXIS 151186 (S.D.N.Y. 2020)……………21

*Doe v. Rockefeller Univ.*,
  No. 950172/2019, 2019 N.Y. Misc. LEXIS 6472 (N.Y. Sup. Ct. (N.Y. Cnty.) 2019)………...12

*Doe v. Shakur*, 164 F.R.D. 359 (S.D.N.Y. 1996)……………………………………………..13, 21

*Doe v. Smith*, 105 F. Supp. 2d 40 (E.D.N.Y. 1999)……………………………………………14

*Doe v. Smith*, 1:19-CV-1121 (GLS/DJS),
  2019 U.S. Dist. LEXIS 205707 (N.D.N.Y. Nov. 27, 2019)…………………………..13, 20, 22

*Doe v. Townes*, No. 19-cv-8034,
  2020 U.S. Dist. LEXIS 83550 (S.D.N.Y. May 12, 2020)…………………………….13, 14, 19

*Doe v. United Services Life Ins. Co.*, 123 F.R.D. 437 (S.D.N.Y. 1988)…………………………19

*Doe v. Weinstein*, 484 F. Supp. 3d 90 (S.D.N.Y. 2020)…………………………………………14, 15

*Doe No. 2 v. Kolko*, 242 F.R.D. 193 (E.D.N.Y. 2006)…………………………………………18-19, 21

*Engelman v. Rofe*, 194 A.D.3d 26 (N.Y. App. Div. First Dept. 2019)……………..…..1, 2, 6, 7

*Ferring B.V. v. Allergan, Inc.*, 4 F. Supp. 3d 612 (S.D.N.Y. 2014)………………………….....8-9

*Geltzer v. Brizinova (In re Brizinova)*, 592 B.R. 442 (E.D.N.Y. 2018)………………………….3

*Globe Newspaper Co. v. Superior Court for Norfolk Cty.*, 457 U.S. 596 (1982)…………………12

*Hoffman v. Parade Publs.*, 15 NY3d 285 (N.Y. 2010)…………………………………………7

*Hoops v. KeySpan Energy*, 794 F. Supp. 2d 371 (E.D.N.Y. 2011)……………………………..10

*Hoy v. Village of Bayville*, 765 F. Supp. 2d 158 (E.D.N.Y. 2011)…………………………….5

*Krijn v. Pogue Simone Real Estate Co.*, 896 F.2d 687 (2d Cir. 1990)……………………….....5

*L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419 (2d Cir. 2011)………………………………3

*Lacura, Inc. v. Masas U.S.A., Inc.*,
  CV 15-3101 (SJF) (AKT), 2016 U.S. Dist. LEXIS 16550 (E.D.N.Y. Feb. 9, 2016)……….4, 5

iii

*Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000)……………………………………………10

*Morningstar Films, LLC v. Nasso*,
    20-cv-2552 (ENV) (RML), 2021 U.S. Dist. LEXIS 170127 (E.D.N.Y. Aug. 15, 2021)……..9

*Niedziejko v. Del. & Hudson Ry. Co.*,
    1:18-CV-0675 (GTS/CFH), 2019 U.S. Dist. LEXIS 51466 (N.D.N.Y. Mar. 27, 2019)………..4

*Roberts v. Babkiewicz*, 582 F.3d 418 (2d Cir. 2009)……………………………………………3

*Rodriguez v. Metro Elec. Contrs., Inc.*,
    18-cv-05140 (KAM), 2021 U.S. Dist. LEXIS 42383 (E.D.N.Y. Mar. 5, 2021)………………5

*Schwab v. Smalls*, 435 F. App'x 37 (2d Cir. 2011)……………………………………………3

*Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008)…………………………..12, 13

*VOX Amplification Ltd. v. Meussdorffer*, 50 F. Supp. 3d 355 (E.D.N.Y. 2014)……………………9


Statutes and Other                    Page(s)

2 Moore's Federal Practice at § 12.38……………………………………………………..3

1991 McKinney's Sessions Laws of N.Y. ……………………………………………………14

CPLR 215(3)…………………………………………………………………………1

Fed. R. Civ. P. 12(c)…………………………………………………………………5

N.Y. Civil Rights Law § 50-b…………………………………………………………14

N.Y.C. Admin. Code § 10-1101……………………………………………………………...1

N.Y.C. Admin. Code § 10-1105(a)………………………………………………………...1

***Preliminary Statement***

Plaintiff Jane Doe (an adult woman proceeding pseudonymously) ("Plaintiff")

commenced this action on August 18, 2020, raising one cause of action—to wit—alleging that

Defendant Cuba Gooding, Jr. ("Defendant") violated New York City's Victims of Gender-

Motivated Violence Protection Law, New York City Administrative Code § 10-1101, *et seq.*

("VGM"), causing her to suffer damages. (ECF #1.)

Defendant now seeks two forms of relief in his motion filed on December 3, 2021: (1) to

dismiss this action on the basis that Plaintiff filing this lawsuit near the end of (yet within) the

statute of limitations period violated his Constitutional rights; and (2) to compel court filings to

be amended with Plaintiff's real name and to disallow her from using a pseudonym going

forward.

For the reasons discussed infra, Defendant's motion should be denied in its entirety.

***Statement of Relevant Facts***

Insofar as is relevant, Plaintiff commenced this action on August 18, 2020, alleging one

cause of action—to wit—a claim pursuant to the VGM, a New York City civil rights statute

which protects individuals against gender-motivated violence. (ECF #1.) In brief, Plaintiff

alleged that she was a victim of sexual assault (rape) at the hands of Defendant on August 24,

2013. (ECF #1, at ¶¶16-20.)

The statute of limitations for bringing a claim under the VGM is seven years. *See* N.Y.C.

Admin. Code § 10-1105(a) ("A civil action under this chapter shall be commenced within seven

years after the alleged crime of violence motivated by gender occurred."); *Engelman v. Rofe*, 194

A.D.3d 26, 30 (N.Y. App. Div. 1st Dept. 2019). In contrast, New York's CPLR 215(3) provides

that an action to recover damages for the tort of assault must be commenced within one year. In

*Engelman*, the Appellate Division harmonized these potentially inconsistent statutes by holding: "Since the nature of the claim [under the VGM] is for a civil rights violation (providing a remedy for those subjected to violence *because of their gender*), the seven-year limitations period provided in the Administrative Code is not preempted by the CPLR statute of limitations for assault claims. *Id.*, at 32 (emphasis added).

<div align="center">

***Argument***

</div>

## I.   DEFENDANT'S MOTION SHOULD BE DENIED AS UNTIMELY

Initially, Defendant's motion was filed after the Court-ordered deadline and thus, his motions should be denied on that basis alone. Specifically, on November 2, 2021, the Court entered a briefing schedule with respect to the present motion and ordered that any motion was "due by December 2, 2021." (Order at 11/02/2021 Minute Entry.) Defendant filed his motion on December 3, 2021, the day after the deadline. (ECF #'s 36-38.) Defendant had every opportunity to request to enlarge the briefing schedule or seek an extension, but clearly failed to do so. Accordingly, Defendant's motion should be denied on this basis alone. *See, e.g., Doe v. E. Irondequoit Cent. Sch. Dist.*, 16-CV-6594 (CJS), 2018 U.S. Dist. LEXIS 76798, at *16-17 (W.D.N.Y. May 7, 2018) ("the motion … is untimely because it was filed outside of the deadlines set by the Court's Motion Scheduling Order.")

## II.   DEFENDANT'S RULE 12 MOTION SHOULD BE DENIED ON ITS MERITS

### A.   Defendant's Rule 12 Motion is One Seeking Judgment on the Pleadings

Initially, a procedural nuance must be addressed regarding so much of Defendant's motion made pursuant to Rule 12 of the Federal Rules of Civil Procedure. Defendant has filed his motion seeking, inter alia, dismissal of the action pursuant to Rules 12(b)(1), 12(b)(6), and 12(c). (ECF #38.) However, Defendant had previously filed an Answer on October 25, 2021 (See

<div align="center">

2

</div>

ECF #31), which predates the filing of the present motion by nearly six weeks. Thus, while

Defendant consistently refers to his motion as a "motion to dismiss" throughout his

memorandum of law, Plaintiff posits that so much of Defendant's motion relating to Rule

12(b)(6) and 12(c) is, in actuality a motion for judgment on the pleadings pursuant to Rule 12(c).

To this end, the primary distinction between motions made under Rule 12(b)(6) and Rule

12(c) is one of timing. As one court explained:

> If the motion is filed before the answer, the court may treat it as a motion to dismiss under Rule 12(b)(6). Conversely, a motion to dismiss filed after the pleadings close will be treated as a motion for judgment on the pleadings. In fact, any distinction between [a Rule 12(b)(6) motion and a Rule 12(c) motion] is purely semantic because the same standard applies to motions made under either subsection.

*Geltzer v. Brizinova (In re Brizinova)*, 592 B.R. 442, 459 (E.D.N.Y. 2018) (quoting 2 Moore's

Federal Practice at § 12.38) (edit in original).

Notably, the Second Circuit has stated that "[t]he standard for addressing a Rule 12(c)

motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss

for failure to state a claim. … In each case, the court must accept as true the complaint's factual

allegations and draw all inferences in the plaintiff's favor." *Cleveland v. Caplaw Enters.*, 448

F.3d 518, 521 (2d Cir. 2006) (internal quotations and citations omitted). *See Schwab v. Smalls*,

435 F. App'x 37, 39 (2d Cir. 2011) (applying the *Iqbal* standard to a Rule 12(c) motion because

the standard for deciding a motion for judgment on the pleadings is the same as for deciding a

motion to dismiss under Rule 12(b)(6)). In addition, "[o]n a [Rule] 12(c) motion, the court

considers 'the complaint, the answer, any written documents attached to them, and any matter of

which the court can take judicial notice for the factual background of the case.'" *L-7 Designs,*

*Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582

F.3d 418, 419 (2d Cir. 2009)).

3

Accordingly, the Court should treat Defendant's Rule 12 motion as one made pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

**B.** **The "Proof" Relied Upon by Defendant in Support of His Motion Should Be Excluded**

Initially, Defendant's Rule 12 motion relies on proof which go beyond the pleadings filed in this case—to wit—the filed complaint and filed answer. In fact, the "proof" upon which Defendant relies is found in a sworn affidavit by Defendant himself (filed at ECF #37-2) as well as "facts" which are not sworn to, but rather, appear for the first time in Defendant's memorandum of law. This "proof" contained in Defendant's memorandum of law (filed at ECF #38) amounts to a bevy of assertions and averments about Plaintiff herself, her motivations as to the timing of filing this lawsuit, having allegedly gone to the police and what the police did or didn't do (and what this Court should infer as to that), as well as Plaintiff's purported access to friends, lawyers, and law enforcement following the incidents which form the basis of this lawsuit. However, none of these are "facts" in any admissible form, and as such, this Court should not consider them on a Rule 12 motion. *See, e.g., Niedziejko v. Del. & Hudson Ry. Co.*, 1:18-CV-0675 (GTS/CFH), 2019 U.S. Dist. LEXIS 51466, at \*73 fn. 106 (N.D.N.Y. Mar. 27, 2019) (a "memorandum of law is an impermissible vehicle by which to assert new factual allegations").

As to Defendant's motion and what materials are permissible for district courts to review under the circumstances, "[w]hen reviewing a Rule 12(c) motion, a court is required to limit its inquiry to matters contained within, attached to or incorporated by reference in the operative pleadings." *Lacura, Inc. v. Masas U.S.A., Inc.*, CV 15-3101 (SJF) (AKT), 2016 U.S. Dist. LEXIS 16550, at \*14 (E.D.N.Y. Feb. 9, 2016) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)). Although district courts have discretion to consider matters outside of the

4

pleadings when adjudicating a Rule 12(c) motion, doing so requires the court to treat the motion "as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(c); *See Krijn v. Pogue Simone Real Estate Co.*, 896 F.2d 687, 689 (2d Cir. 1990). In addition, where a court chooses to convert a Rule 12(c) motion into one for summary judgment, "all parties should be given a reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Krijn*, 896 F.2d at 689.

In the present case, as in *Lacura, supra*, Defendant's motion was neither styled in the alternative as one made pursuant to Rule 56, nor is there any indication in his motion papers that counsel contemplated this Court converting his motion into one for summary judgment. Further, given the nature of the claims and allegations in this lawsuit, this Court should conclude that Plaintiff is entitled to discovery before having to oppose a motion for summary judgment, and thus conversion at this stage would be imprudent. *See Hoy v. Village of Bayville*, 765 F. Supp. 2d 158, 164 (E.D.N.Y. 2011).

In light of the above, it submitted that this Court should decline to convert the instant motion into one for summary judgment, and consequently, the affidavit of Defendant himself submitted in support (at ECF #37-2) as well as the additional "facts" which are contained in Defendant's memorandum of law should be excluded from consideration from Defendant's Rule 12 motion. *See Rodriguez v. Metro Elec. Contrs., Inc.*, 18-cv-05140 (KAM), 2021 U.S. Dist. LEXIS 42383, at *11 (E.D.N.Y. Mar. 5, 2021) ("The court agrees with the plaintiffs that it may not properly consider [plaintiff's managing supervisor's—a defendant] affidavit in deciding [the supervisor's] 12(c) motion [as the] defendant's affidavit is outside of the pleadings, and as such, the court will rule on [the supervisor's] 12(c) motion solely based on the facts presented in plaintiffs' amended complaint"); *Lacura*, 2016 U.S. Dist. LEXIS 16550, at *15.

C.  **Defendant's Rule 12(c) Motion Lacks Merit**

The core of Defendant's argument is, in essence, that by virtue of Plaintiff waiting until the end of the seven-year statute of limitations period to file this lawsuit, Defendant has been deprived of his Constitutional rights warranting dismissal of the action. Initially, however, this argument is flawed as, again, it relies on "proof" which contains absolutely no factual basis in admissible form. For example, Defendant avers without any factual support that "[n]o exceptional circumstances caused Plaintiff to wait almost seven years to bring this suit," and that "[s]he made a decision not to sue [Defendant] [until near the end of the statute of limitations period]." (ECF #38, at pg. 4.) As such, and as stressed above, said "proof" should be excluded from the Court's review.

Regarding the merits of Defendant's Rule 12(c) motion from a legal standpoint, Defendant seems to make two contentions: (1) that the VGM (a New York City statute) is unenforceable due to its purported collision with CPLR 215(3) (a New York State statute), and (2) that Plaintiff already had a remedy available to her to bring an intentional tort, and by virtue of "waiting" to bring a lawsuit under the VGM (which has a longer statute of limitations), Defendant's Constitutional rights have been violated due to the prejudice suffered as outlined in his affidavit (filed at ECF #37-2.) Both these contentions fail, as will be addressed below, in turn.

As for Defendant's first contention, Defendant interestingly relies on a 2008 case out of the New York State Supreme Court (New York County)—to wit, *Cordero v. Epstein*, 869 N.Y.S.2d 725 (N.Y. Sup. Ct. (N.Y. Cnty.) 2008)—and asks the Court to reject subsequent controlling caselaw out of the New York State Supreme Court, Appellate Division, First Department (the "First Department"), in *Engelman v. Rofe*, *supra*. His theory, which is a stretch, is in essence, that *Cordero* relies on New York State Court of Appeals caselaw whereas

6

*Engelman* seemingly doesn't (which actually isn't true). In any event, aside from Defendant purportedly asking this Court to ignore the principles of *stare decisis*, the appellate panel in *Engelman* went so far as to explain why the progeny set forth in *Cordero* should be rejected. *See Engelman*, 194 A.D.3d at 30. To this end, the Court in *Engelman* (a case similarly involving women who allegedly suffered sexual assaults[1]) stated that "plaintiffs' claim is in the nature of a civil rights cause of action and therefore CPLR 215([3]) is inapplicable." *Id.*, at 30. In sum, the Court explained:

> [W]e find that the legislative intent of the VGM was to create a civil rights remedy or cause of action such as in [the federal Violence Against Women Act], rather than to extend the statute of limitations for a particular class of assaults. Since the nature of the claim is for a civil rights violation (providing a remedy for those subjected to violence because of their gender), the seven-year limitations period provided in the Administrative Code is not preempted by the CPLR statute of limitations for assault claims.

*Id.*, at 32.

Thus, because CPLR 215(3) does not preempt the VGM, Defendant's first contention fails.

As to Defendant's second contention, the Court in *Engelman* explicitly distinguished the two operative statutes and explained why they are in harmony. In sum, an assault claim (regardless of what motivated the assault) may be brought within one year under CPLR 215(3). Additionally, if an assault occurs that is motived by one's gender (and assuming there is a connection to New York City that satisfies the test set forward in *Hoffman v. Parade Publs.*, 15 NY3d 285 (N.Y. 2010)), a plaintiff may bring a claim under the VGM within the seven-year statute of limitations. *See Engelman*, 194 A.D.3d at 30.

---

[1] According to the Court in *Engelman*, "[t]he amended complaint alleged that on multiple dates between the summer of 2011 and July 2016, [the defendant] made unwanted sexual advances toward plaintiffs, which included forcibly kissing some of the women and touching their breasts, buttocks and groins, and forcing some to touch his penis or buttocks." *Id.*, at 28.

Here, Plaintiff alleges she was caused to suffer sexual assaults (rape) at the hands of Defendant. (*See* ECF #1, at ¶¶17-21.) In the case of *Breest v. Haggis*, the First Department conclusively stated that "[r]ape and sexual assault are, by definition, actions taken against the victim without the victim's consent. Without consent, sexual acts such as those alleged [in that case] are a violation of the victim's bodily autonomy and an expression of the perpetrator's contempt for that autonomy. Coerced sexual activity is dehumanizing and fear-inducing. *Malice or ill will based on gender is apparent from the alleged commission of the act itself.* Animus inheres where consent is absent." *Breest v. Haggis*, 180 A.D.3d 83, 94 (N.Y. App. Div. 1st Dept. 2019) (emphasis added).

Accordingly, based on the admissible proof (i.e., the filed complaint and answer), Plaintiff has adequately pleaded that she was subjected to gender-motivated violence adequate to raise a claim under the VGM and survive Defendant's Rule 12(c) motion.

## D. <u>So Much of Defendant's Motion Raising a Laches Defense Should be Rejected</u>

Although not explicitly stated (or well-articulated for that matter), Defendant's motion *seems* to also be one seeking dismissal on the grounds of laches (a defense based in common law). Notably, Defendant passingly mentions laches as a defense (on page 4 of his memorandum of law (at ECF #38)), however, his argument in this vein is far from fully developed. In any event, should the Court conclude that Defendant is in actuality seeking dismissal on the grounds of laches, such a motion should be denied.

Insomuch as Defendant raises a laches defense, first and foremost, Defendant does not dispute that Plaintiff filed this action within the VGM statute of limitations. As to the merits, a party asserting the defense of laches must establish that: "(1) the plaintiff knew, or should have known, of his [or her] claim; (2) the plaintiff inexcusably delayed in taking action; and (3) the

defendant[ was] prejudiced as a result." *Ferring B.V. v. Allergan, Inc.*, 4 F. Supp. 3d 612, 622 (S.D.N.Y. 2014).

As for the first prong, Defendant presents no proof in admissible form within the pleadings that Plaintiff knew, or should have known, of her claim under the VGM. Likewise, there is no proof that Plaintiff inexcusably delayed commencing this action (aside from baseless conjecture void of facts averred in Defendant's memorandum of law). And finally, there are similarly no facts or proof in admissible form within the pleadings that Defendant was prejudiced.[2]

Furthermore, and in any event, it is simply too early to resolve the fact-intensive issues undergirding a laches defense at the pleadings stage. Indeed, caselaw uniformly urges caution when considering a defense of laches even at the summary judgment stage—"and even more so on a motion to dismiss." *BJB Ltd. v. iStar Jewelry LLC*, 1:19-cv-3748 (ENV) (RER), 2021 U.S. Dist. LEXIS 73590, at *19 (E.D.N.Y. Apr. 9, 2021) (citing *Alston v. 1749-1753 First Ave. Garage Corp.*, No. CV 12-2676 (DRH), 2015 U.S. Dist. LEXIS 182392, at *2 (E.D.N.Y. Jun. 30, 2015) ("[L]aches requires a fact-intensive analysis and balancing of equities necessitating consideration of matters beyond the complaint.")); *See Morningstar Films, LLC v. Nasso*, 20-cv-2552 (ENV) (RML), 2021 U.S. Dist. LEXIS 170127, at *26 (E.D.N.Y. Aug. 15, 2021) ("A laches defense is typically unavailable on a motion to dismiss, given its similarly fact-intensive nature"); *VOX Amplification Ltd. v. Meussdorffer*, 50 F. Supp. 3d 355, 364 (E.D.N.Y. 2014) ("[L]aches is an affirmative defense and is generally not available on a motion to dismiss.")

Based on the foregoing, it is entirely too early for the Court to entertain a defense grounded in laches and Plaintiff would be prejudiced for the Court to consider one without

---

[2] Plaintiff relies as the same progeny as outlined in subsection II(B) that Defendant's affidavit should not be considered as part of any laches defense raised at this stage.

having had the opportunity to conduct discovery as to this defense. Accordingly, a defense in laches should be rejected at this stage.

**E.  Defendant's Motion Pursuant to Rule 12(b)(1)**

Defendant has also moved pursuant to Rule 12(b)(1) seeking dismissal of the action. Plaintiff posits that the only ground upon which Defendant (seemingly) seeks dismissal under this subsection is that by virtue of the VGM having been rendered unconstitutional *as applied* to Defendant under the facts alleged, this Court lacks constitutional power of adjudication.[3] If this is indeed Defendant's argument, it is without merit.

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *See Crook v. Sanchez*, CV 13-328 (JFB) (WDW), 2014 U.S. Dist. LEXIS 178981, at *8-9 (E.D.N.Y. Feb. 12, 2014). The standard for reviewing a 12(b)(1) motion is essentially the same as the 12(b)(6) standard, except that a "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Hoops v. KeySpan Energy*, 794 F. Supp. 2d 371, 375-76 (E.D.N.Y. 2011) (citation omitted).

Here, it is submitted that if the Court concludes that Defendant's arguments relating to the relief sought pursuant to Rule 12(b)(6) and Rule 12(c) are without merit, then his Rule 12(b)(1) motion should also be rejected on that basis (as there is seemingly no separate basis seeking that form of relief).

---

[3] Plaintiff can only surmise this is the ground for Rule 12(b)(1) relief as Defendant never really clarifies any distinction between the arguments raised for Rule 12(b)(1) and 12(b)(6)/ 12(c) relief.

### III.   THE COURT SHOULD ALLOW PLAINTIFF TO PROCEED PSEUDONYMOUSLY

Defendant contends in Point II in his memorandum of law that this Court should not allow Plaintiff to proceed pseudonymously, contending that allowing her to do so would violate Defendant's "constitutional rights to transparency in this case." (ECF #38, at pg. 17.) The main focus of Defendant's motion as to this seems to be akin to the general desire for transparency and openness in judicial proceedings. In fact, the only prejudice Defendant himself seems to allege that he *may* hypothetically (and without any detail) suffer is that allowing Plaintiff to continue pseudonymously "would place [him] at a disadvantage." (ECF #38, at pg. 15.) To this end, Defendant posits that he has a "right to investigate to defend himself. This is largely a he said/she said case in which the credibility of the parties is vital." Further, by compelling Plaintiff to proceed under her true identity, "[n]eighbors, former friends, ex-boyfriends, and the like may contribute invaluable information to benefit" Defendant. (ECF #38, at pg. 15.) Defendant goes on to state that "[t]his is especially true relative to the internet a vehicle for voluminous and fast information."[4] (ECF #38, at pg. 16.)

As will discussed below, Plaintiff avers that certain factors weigh heavily in Plaintiff's favor whereas others are either tepidly in Defendant's favor or are neutral. Given the weight of the factors in their aggregate, Plaintiff continuing to proceed under the pseudonym Jane Doe should be allowed.

### A.   Proceeding under a Pseudonym is Justified if the Plaintiff has a Substantial Privacy Interest Which Outweighs the Presumption of Openness in Judicial Proceedings

The determination of whether to allow a plaintiff to proceed under a pseudonym "requires the court to use its discretion in balancing plaintiff's privacy interest against the presumption in favor of open trials and against any potential prejudice to defendant." *Anonymous*

---

[4] Neither Plaintiff nor her counsel understand what this last sentence means.

*v. Lerner*, 124 A.D.3d 487, 487 (N.Y. App. Div. 1ˢᵗ Dept. 2015) (citations and quotation

omitted). The right of the public and press to "[a]ccess may still be respected in keeping with

constitutional requirements while sensitive information is restricted in keeping with 'the State's

legitimate concern for the well-being' of an individual." *Doe v. Rockefeller Univ.*, No.

950172/2019, 2019 N.Y. Misc. LEXIS 6472, at *2 (N.Y. Sup. Ct. (N.Y. Cnty.) 2019) (quoting

*Globe Newspaper Co. v. Superior Court for Norfolk Cty.*, 457 U.S. 596, 606 (1982)). Moreover,

while "[i]t is elementary that the primary function of a pleading is to apprise an adverse party of

the pleader's claim the same principle does not necessarily apply to a pleader's name." *Doe v.*

*Good Samaritan Hosp.*, 115 N.Y.S.3d 853, 857 (N.Y. Sup. Ct. (Nassau Cnty.) 2019) (citation

and quotation omitted). Use of a pseudonym also "impacts far less on the public's right to open

proceedings than does the actual closing of a courtroom or the sealing of records." *Id.* at 857-58.

The U.S. Court of Appeals for the Second Circuit has identified a "non-exhaustive" list of

considerations that a district court should take into account when ruling on a motion to proceed

pseudonymously. *See Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008).

The *Sealed Plaintiff* factors are:

> (1) whether the litigation involves matters that are highly sensitive and of a personal
> nature; (2) whether identification poses a risk of retaliatory physical or mental harm
> to the [plaintiff] or even more critically, to innocent non-parties; (3) whether
> identification presents other harms; (4) whether the plaintiff is particularly
> vulnerable to the possible harms of disclosure, particularly in light of [her] age; (5)
> whether the suit is challenging the actions of the government or that of private
> parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press
> [her] claims anonymously; (7) whether the plaintiff's identity has thus far been kept
> confidential; (8) whether the public's interest in the litigation is furthered by
> requiring the plaintiff to disclose [her] identity; (9) whether, because of the purely
> legal nature of the issues presented … there is an atypically weak public interest in
> knowing the litigants' identities; and (10) whether there are any alternative
> mechanisms for protecting the confidentiality of the plaintiff.

*Id.* at 190 (alterations, citations, and quotations omitted).

A district court is not required to list each of the factors or "use any particular formulation" provided that it "balance[s] the interests at stake." *Sealed Plaintiff*, 537 F.3d, at 191 n.4.  Ultimately, whatever factors are employed (or not employed), in exercising its discretion, the court "must balance the interests of the parties, the public, and justice." *Doe v. Amherst Cent. School Dist.*, 196 A.D.3d 9, 12 (N.Y. App. Div. 4th Dept. 2021).

    i.   **This Case Involves Matters of a Highly Sensitive and Personal Nature**

Plaintiff's allegations of sexual assault (rape) are highly sensitive and of an extremely personal nature. *See, e.g., Doe v. Townes*, No. 19-cv-8034, 2020 U.S. Dist. LEXIS 83550, at *3 (S.D.N.Y. May 12, 2020) (allegations of forcible touching and sexual abuse are "highly sensitive and of a personal nature," the court found this factor "weighs in favor of proceeding anonymously"); *Doe v. Shakur*, 164 F.R.D. 359, 361 (S.D.N.Y. 1996) (finding that plaintiff who alleged she was the victim of a "sexual assault ... has very legitimate privacy concerns").

Further, "protecting the anonymity of sexual assault victims ... can be an important safeguard to ensure that the due process rights of [those victims are] protected." *Doe v. Colgate Univ.*, No. 15-CV-1069, 2016 U.S. Dist. LEXIS 48787, at *6-7 (N.D.N.Y. Apr. 12, 2016). Notably, the Court in *Doe v. Smith*, 1:19-CV-1121 (GLS/DJS), 2019 U.S. Dist. LEXIS 205707 (N.D.N.Y. Nov. 27, 2019) permitted that plaintiff to proceed under a pseudonym after finding that the "case will likely require a detailed discussion of the particular sexual encounter alleged in the complaint" which "weighs in favor of granting Plaintiff's request [to proceed under a pseudonym]." *Id*. at *3.  The same should apply here, especially given that Defendant even admits in his memorandum of law that this is a "he said/ she said case" (his words) in which each of their versions of what transpired during a short period in a hotel room will be pivotal to the trier of fact's determination on the issue of liability.

13

Further to this point, many states in this country, including New York, have enacted laws to protect the anonymity of sexual assault victims. *See, e.g.,* N.Y. Civil Rights Law § 50-b. Upon approving New York's rape shield law, then-Governor Mario Cuomo stated, "rape … and sexual assault victims have unfortunately had to endure a terrible invasion of their physical privacy. They have a right to expect that this violation will not be compounded by a further invasion of their privacy." 1991 McKinney's Sessions Laws of N.Y., at 2211-12 (quoted in *Deborah S. V. Diorio*, 583 N.Y.S.2d 872, 881 (N.Y. City Civ. Ct. 1992)).

   ii.   **Identification Poses a Risk of Retaliatory Harm and Psychological Injury**

"The risk of psychological injury stemming from identification is a cognizable harm that can serve as a legitimate basis for proceeding anonymously." *Doe v. Weinstein*, 484 F. Supp. 3d 90, 94 (S.D.N.Y. 2020).  Forcing Plaintiff to identify herself not only "poses a risk that [she] would be subject to unnecessary ridicule and attention," *Colgate Univ.*, 2016 U.S. Dist. LEXIS 48787, at *3, but also makes physical retaliation a real possibility. *See, e.g., Doe v. Smith*, 105 F. Supp. 2d 40, 43-44 (E.D.N.Y. 1999) (Plaintiff allowed to proceed anonymously when she provided evidence "predicting that revelation of her identity will likely cause psychological and emotional pain so intense that it would threaten her stability, her safety, and even her life.") When evaluating the risks that identification would present, "if disclosure creates risk of harm from third parties, disclosure is disfavored. … A risk of retaliation may be found where there is a history of substantiated prior action directed at plaintiff …" *Townes*, 2020 U.S. Dist. LEXIS 83550, at *4 (citations omitted).

Here, Plaintiff has already received a threat regarding her participation in this lawsuit. Specifically, on September 30, 2021, at 8:38 AM, Plaintiff received a telephone call from a private number and answered the call. Upon answering and saying "hello," a person whose voice

14

sounded like a woman responded in a threatening tone by saying "We know who you are." Plaintiff ended the call without responding. (Plaintiff's Declaration ("Pl. Decl."), at ¶3.[5]) A print-out of the call activity (printed off by Plaintiff (Pl. Decl., at ¶4)) is also supplied in support of Plaintiff's opposition at Exhibit 2 annexed to the Declaration of Plaintiff's legal counsel. [6] Plaintiff posits that the risks of physical retaliation and psychological harm from said threats by members of the public (including from whoever the "we" is referenced in that September 30 call) and fans of Defendant will only increase should her identity be disclosed.

Notably, the present case is unlike the case of *Doe v. Weinstein*, 484 F.Supp. 3d 90 (S.D.N.Y. 2020), in which that plaintiff moved to proceed under a pseudonym (said motion was ultimately denied) due to the defendant's alleged generalized history of "harassing his accusers." The district court reasoned, in part, that speculation as to the possibility of retaliation was insufficient to grant the plaintiff's motion to proceed under a pseudonym. *Id.*, at 96. Here, however, Plaintiff has already faced an actual threat as detailed above. Additionally, Plaintiff is less concerned about retaliation from Defendant himself, but rather, from members of the general public.  While Plaintiff does not know the identity of this caller, she is terrified that the floodgates of continued threats will open should her name be disclosed. *See Doe v. Hobart & William Smith Colls.*, 6:20-CV-06338 EAW, 2021 U.S. Dist. LEXIS 52371, at *7 (W.D.N.Y. 2021) ("the risks of harm from third parties were his identity required to be disclosed has been credibly argued").

Additionally, as courts in this Circuit have recognized, it is possible for anyone to "determine whether a given individual is a party to a lawsuit in federal court anywhere in the

---

[5] A copy of Plaintiff's Declaration is annexed to the Declaration of Plaintiff's legal counsel at Exhibit 1.
[6] The call activity not germane to this issue has been redacted.

country by the simplest of computer searches, to access the docket sheet of any such case electronically, and . . . that entire case files will be accessible over the Internet." *Doe v. City of New York*, 201 F.R.D. 100, 102 (S.D.N.Y. 2001). Given the threatening phone call she has already received as well as the ease with which the public could access court files in this case, Plaintiff's fears of retaliation from individuals are completely reasonable if her identity is disclosed.

Plaintiff also asserts that revealing her true identity would cause her to suffer psychological injury. Specifically, as stated in Plaintiff's Declaration, she believes that such exposure, if allowed, would cause her to experience trauma and exacerbation of debilitating symptoms that she has suffered as a result of Defendant's actions. (Pl. Decl., at ¶8.)

As previously stated in Plaintiff's sworn Declaration (filed on July 26, 2021, at ECF #18), Plaintiff has suffered significant emotional distress as a result of the assaults she was caused to suffer at the hands of Defendant. (Pl. Decl., at ¶9.) She believes that if public disclosure of her true identity were compelled, it would cause her to experience trauma and exacerbation of symptoms she has worked hard to overcome for nearly 10 years. (Pl. Decl., at ¶10.) As previously mentioned, she has felt a sadness, sometimes more intense than other times, which has continued in some form since the assaults to this day. She has felt suicidal at times and had flashbacks. These flashbacks cause her to become very anxious. Maintaining some semblance of privacy and security in this lawsuit has helped her cope with her anxiety and fears. She does not believe she has the psychological strength to deal with the exposure that would come with publicizing her name and would exacerbate her feelings of sadness, anxiety, and suicidal ideations. (Pl. Decl., at ¶11.)

Further, following the assaults, she let herself go physically. She stopped caring how she

16

looked or felt and attempted to make herself as unattractive as possible. She felt that this was the best way to be unnoticed, believing that if men ignored her, she would be safe from any future assaults. She became afraid of the attention. She also began binge eating, mostly alone, in order to make herself feel better as a form of coping with the pain. She has made strides in how she cares for herself, including how she maintains herself physically and to avoid binge eating. Not caring for herself and binge eating are how she coped with the pain and shame of her experience. Publicly revealing her name would have a devastating effect on the progress she has made over the years, and she fears it would cause her to slide back to an unhealthy level of personal maintenance and poor eating habits. (Pl. Decl., at ¶12.)

Additionally, Plaintiff went through periods of stress and fear and she has had difficulty coping in normal social situations. She has become leery of being around people when they are drinking or became intoxicated and began withdrawing from being social. This was mostly because she had lost trust in people. This has subsided over time as she has begun to be more comfortable around people drinking alcohol and made progress in trusting others. However, Plaintiff knows herself well enough that she will withdraw from social situations out of the fear that others will be aware that she is a rape victim at the hands of a celebrity. This fear alone will cause her to retreat from being out in the public, which she would prefer to avoid as it was overall detrimental to her emotional health when it previously occurred. (Pl. Decl., at ¶13.)

Also, Plaintiff's quality of life took a significant drop since these incidents with Defendant. Notably, her self-esteem has dropped, she has felt like a fool, and most of all she felt worthless. Her career took a backseat for a period of time after the incidents as she struggled to cope with being the victim of a sex offense. She began to question her own decision-making in the professional setting. Looking back, Plaintiff lost trust in her professional instincts and

17

believed she couldn't make good decisions for people in light of what happened to her. To this day, it is difficult for her to say the word "rape" as it brings upon her an intense amount of shame. She has made progress in how she feels about herself including having self-value. Over time, she has also experienced growth professionally in relying on her professional instincts. However, she feels that if the privacy and security of proceeding under Jane Doe were eliminated, her self-esteem would be negatively impacted, her work performance would suffer, and the shame of her real name attached to the words "rape victim" would be trauma-inducing. (Pl. Decl., at ¶14.)

In sum, Plaintiff asserts that this particularized attestation as to the psychological harm it would cause her if she were forced to disclose her true identity is compelling, and thus, this Court should allow Plaintiff to continue as "Jane Doe." *See Doe No. 2 v. Kolko*, 242 F.R.D. 193, 198 (E.D.N.Y. 2006) (in allowing a plaintiff to continue under a pseudonym, the court held, in relevant part, "[i]n support of his motion, plaintiff states [in his sworn affidavit] that he suffers from post-traumatic stress disorder, bipolar disorder and depression and will experience psychological harm if his identity is revealed in this case"); *Doe v. Bloomberg L.P.*, 2021 N.Y. Slip Op 06754, 2021 N.Y. App. Div. LEXIS 6797, at *1 (N.Y. App. Div. 1st Dept. 2021) (court relied upon, inter alia, the plaintiff's sworn affidavit "attesting to the psychological harm it would cause to disclose her name publicly").

### iii. <u>Lack of Prejudice to Defendant</u>

Plaintiff argues that Defendant would not suffer any prejudice should Plaintiff be allowed to continue proceeding pseudonymously.  In fact, Defendant is already aware of Plaintiff's true identity and will have an uninhibited opportunity to litigate this matter and cross-examine Plaintiff, regardless of whether Plaintiff's identity is disclosed publicly. *See, e.g., Kolko*, 242

F.R.D. at 198 ("Other than the need to make redactions and take measures not to disclose plaintiff's identity, defendants will not be hampered or inconvenienced merely by Plaintiff's anonymity in court papers. Indeed, defendants already know plaintiff's true identity"); *See also Townes*, 2020 U.S. Dist. LEXIS 83550, at *16 ("Defendant, because he knows Plaintiff's name, is not greatly prejudiced in his ability to conduct discovery."); *Doe v. United Services Life Ins. Co.*, 123 F.R.D. 437 (S.D.N.Y. 1988) (the court allowed the plaintiff to proceed pseudonymously and reasoned that the defendant will not be harmed because it already knows plaintiff's identity and "it will have full discovery rights as the case progresses, and it will only be barred from using or disclosing the fruits of its discovery for purposes other than the defense of this action."); *Smith*, 2019 U.S. Dist. LEXIS 205707, at *5 ("Defendant knows Plaintiff's identity, and so his ability to conduct discovery will not be impeded, and will only practically be inconvenienced by having to take measures to avoid disclosing Plaintiff's identity publicly").

It should be noted that certain materials in this case have been filed *ex parte* and under seal, which means that viewing those documents is restricted to the parties as well as certain members of the Court itself. Notably, a Declaration revealing the true identity of Plaintiff was filed on July 26, 2021 (at ECF #18) (in the context of Plaintiff's previously filed motion for default judgment). It can be assumed that Defendant has reviewed this (as well as all other filings made to the docket). Furthermore, and in any event, Defendant has interposed Rule 26(a) disclosures listing certain "witnesses" from the evening in question. Indeed, this further demonstrates Defendant's knowledge of Plaintiff's true identity. Accordingly, Defendant would not be prejudiced by Plaintiff continuing to proceed pseudonymously.

Lastly, and significantly on this point, Defendant and his attorneys have known about Plaintiff's true identity *for years*. As the Court is aware, Defendant's attorney—an individual by

the name of Mark J. Heller—opined on the merits of Plaintiff's claims to the New York Times in

or around mid-August 2020, asserting that they were "completely false and defamatory" and

pointed out that they had not resulted in criminal charges. (ECF #29-1.) Further, Defendant's

other attorney—an individual named Peter Toumbekis—spoke with Plaintiff's counsel (the

undersigned) about Plaintiff's allegations at length on September 17, 2020, during which he (Mr.

Toumbekis) advised that he had discussed said allegations with Defendant. (ECF #9, at ¶16.)

Also, this case was filed on August 18, 2020 (ECF #1), Defendant filed his Answer on October

25, 2021 (ECF #31) and is only now for the first time (on December 3, 2021) taking issue with

Plaintiff's pseudonymous status. The optics of the timing suggest that Defendant's true interest

in seeking to reveal Plaintiff's identity is to open the floodgates to hopeful public shame and (as

he somewhat admits) "ex-boyfriends"[7] and the like coming forward with 'dirt' he can use in a

thinly-veiled attempt to chill Plaintiff from continuing this lawsuit (or perhaps worse, for

members of the public or individuals he has co-opted to make more frequent threats against her).

###    iv.  **Plaintiff has Kept her Identity Confidential in the Proceedings**

As described above, Defendant has been aware of Plaintiff's identity for at least a year

and a half and, when presented with the opportunity, has smeared her allegations in the media.

(ECF #29-1). On the other hand, Plaintiff has kept her identity confidential from the public

throughout these proceedings.  Specifically, she has made no public statements about these

matters and even her close family and friends are unaware of the circumstances prompting this

lawsuit against Defendant. (Pl. Decl., at ¶6.) Further, Plaintiff s identity has never been reported

in any media outlet, which also weighs heavily in favor of allowing her to proceed anonymously.

---

[7] It is somewhat telling that Defendant explicitly chose to state that they seek unnamed and unknown "ex-boyfriends" to come forward with information. The suggestion as to this is that ex-boyfriends may have carnal knowledge of Plaintiff which Defendant could then weaponize for his defense in this lawsuit.

*See, e.g. Smith*, 2019 U.S. Dist. LEXIS 205707, at *5 (granting motion to proceed anonymously because "Plaintiff's anonymity has been maintained thus far" and "Plaintiff's request is not undercut by her identity already having been publicly disclosed."); *See also Doe v. Berg*, 15-cv-9787, 2016 U.S. Dist. LEXIS 198309, at *3 (S.D.N.Y. Feb. 10, 2016) (motion was denied because "Plaintiff's identity has not been kept confidential—the New York Post has already revealed her name and reported on her relationship with Defendant in a related state action."); *Shakur*, 164 F.R.D. at 362 (denying motion to proceed under pseudonym because "plaintiff has conceded that the press has known her name for some time")

### v.  **The Public's Interest in Protecting Plaintiff's Identity**

In general, "the public … has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes." *Kolko*, 242 F.R.D. at 195.  "This public interest is only stronger given the sprawling allegations of widespread sexual abuse levied against [Defendant] in related proceedings." *Doe v. Nygard*, 20 Civ 6501 (ER), 2020 U.S. Dist. LEXIS 151186, at *7 (S.D.N.Y. 2020).

Here, as in *Nygard*, there have been sprawling allegations of widespread sexual abuse suffered by women at the hands of Cuba Gooding, Jr. Defendant even admits as much in his memorandum of law. Specifically, in the section of his memorandum where he is multiple times asking the Court to "fast-forward," Defendant states: "Reporters couldn't get enough of the scores of claims against Cuba Gooding, Jr. or the dozens of women speaking out about acts of alleged touching and groping." (ECF #38, at pg. 2.) In another section of his memorandum, Defendant states he is facing "[g]roping accusations of no less than 30 women." (ECF #38, at pg. 1.)

Aside from Defendant's own admissions in his memorandum of law, at least one woman—to wit, a woman named Natasha Ashworth—has sued Defendant civilly alleging nonconsensual contact of the sexual nature by Defendant. That case is currently pending in the New York State Supreme Court (New York County) bearing case number 160195/2019.[8] This Court can also take judicial notice that there are criminal charges (six misdemeanor counts) currently pending against Defendant in New York State Supreme Court-Criminal Term (case number 03335-2019) in which multiple women are accusing him sexual assault. The suggestion that Defendant is a serial sex offender is a fairly accurate label. Protecting Plaintiff's identity will allow other women to feel undeterred from coming forward (of which the Court can assume there are probably many).

### vi.  There is No Alternative Mechanism for Protecting Plaintiff's Confidentiality

Plaintiff submits that there are no alternative mechanisms for protecting her confidentiality and identity.  Plaintiff is unaware of any protective order or confidentiality agreement that would enable Plaintiff to maintain confidentiality.  Once Plaintiff's identity is disclosed to the public, there is no way to thereafter undo that disclosure should the retaliatory threatening phone calls resume. *See Hobart & William Smith Colls*., 2021 U.S. Dist. LEXIS 52371, at *10 ("the Court finds that this factor weighs in Plaintiff's favor at this stage of the proceedings as it appears to be the least restrictive appropriate remedy available to allow the litigation to proceed but to protect Plaintiff's identity and reputation at this time."); *Smith*, 2019 U.S. Dist. LEXIS 205707, at *6 (the plaintiff was permitted to proceed anonymously because "the Court sees no alternative manner of protecting Plaintiff's identity.")

---

[8] Plaintiff had previously filed a copy of that Complaint in the context of her motion for default judgment, at ECF #20-4.

1 of 29

### vii.  **Remaining Factors Weigh Against Plaintiff or are Neutral**

As stated above, in determining whether to allow a plaintiff to maintain her

pseudonymous status, courts should utilize a balancing test in weighing the *Sealed Plaintiff*

factors, and notably, no particular factor is necessarily dispositive. Plaintiff acknowledges that

the fourth factor—to wit, whether the plaintiff is particularly vulnerable to the possible harms of

disclosure, particularly in light of her age—does not weigh in her favor. At the time of the

incident in question, Plaintiff was an adult. *See Doe v. Del Rio*, 241 F.R.D. 154, 158 (S.D.N.Y.

2006) ("courts have been readier to protect the privacy interest of minors in legal proceedings

than of adults") (citation omitted). The same goes with the fifth factor—whether her suit is

challenging the actions of the government or that of private parties. While this fifth factor seems

to be the least-frequently factor litigated in district courts nationwide, there is somewhat easier

permission to maintain anonymity when challenging the validity of government activity. *See,*

*e.g., Doe v. Hallock*, 119 F.R.D. 640, 643 (S.D. Miss. 1987). That isn't the circumstance here.

Lastly, the ninth factor—whether the issues presented are factual or legal in nature—is

neutral. Defendant has raised one issue in his motion challenging the Constitutionality of the

VGM as applied to Defendant pursuant to Rule 12. In essence, Defendant's argument presents a

purely legal question as, by the sheer nature of a Rule 12 motion, all facts are deemed true. *See,*

*e.g., Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015). In weighing this factor, the result

inures to neither Plaintiff nor Defendant.

Nevertheless, when all factors are viewed in the aggregate, Plaintiff argues that the

gravamen of weight is in her favor in continuing to proceed pseudonymously, and accordingly,

respectfully requests that the Court deny so much of Defendant's motion seeking to compel her

to amend the pleadings.

*Conclusion*

For the aforementioned reasons, Defendant's motion to dismiss the action and to compel

Plaintiff to amend the pleadings, should be denied in its entirety.

Dated:  New York, New York
        January 4, 2022

<div style="margin-left:50%">

**NISAR LAW GROUP, P.C.**

_____
Casimir Wolnowski
*Attorneys for Plaintiff*
One Grand Central Place
60 East 42nd St., Ste. 4600
New York, NY 10165
Ph: (646) 889-1007
Fax: (516) 604-0157
Email: cwolnowski@nisarlaw.com

</div>

24