UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                             :
        JANE DOE,                                            :
                                                             :            20-cv-06569 (PAC)
                              *Plaintiff,*                    :
                                                             :
        -against-                                            :
                                                             :            **ORDER & OPINION**
                                                             :
        CUBA GOODING, JR.,                                   :
                                                             :
                              *Defendant.*                   :
-------------------------------------------------------------x

Plaintiff Jane Doe brings this diversity action alleging Defendant Cuba Gooding, Jr.

sexually assaulted her.  Defendant has moved under Federal Rule of Civil Procedure 12 for

dismissal and judgment on the pleadings under a theory that Plaintiff's claim is untimely.  He has

also moved to amend the pleadings to disclose the real names of Plaintiff and any witnesses.

Having reviewed the parties' submissions,[1] the Court concludes that Plaintiff's claim is timely and

that she shall continue to proceed under a pseudonym during discovery.  Defendant's motions are

therefore **DENIED**.  However, a protective order will allow for limited disclosure of Plaintiff's

name, and Defendant shall have an opportunity to revisit the pseudonym issue before trial.

## BACKGROUND

Plaintiff alleges Defendant sexually assaulted her in a hotel on August 24, 2013.  One week

shy of seven years after the alleged assault, on August 18, 2020, Plaintiff filed her Complaint.  *See*

Compl. (ECF No. 1).  The Complaint asserts only one claim: a violation of New York City's

---

[1] Although Defendant's motions were filed one day late, the Court "has broad discretion to determine whether to overlook a party's failure to comply with local rules" and does so here. *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 108 n.2 (2d Cir. 2006).  The parties are cautioned, though, that absent extraordinary circumstances, the Court will not consider future submissions that do not comply with scheduling deadlines.

Victims of Gender-Motivated Violence Protection ("VGM") Law, N.Y.C. Admin. Code § 10–1101 *et seq.* (effective Dec. 19, 2000).   Plaintiff also moved to proceed pseudonymously or, alternatively, to seal the case.   After Defendant failed to respond to the complaint, the Court granted Plaintiff's motion for default judgment.   *See* Default Judgment Order (ECF No. 23).   The Court likewise granted Plaintiff's motion to proceed pseudonymously "without prejudice to future objection from Defendant."   *Id.* at 5.

Defendant then appeared, however, and the Court vacated the default judgment upon the parties' stipulation.   Defendant has now filed an Answer as well as two motions.   First, Defendant moves under Rule 12(b)(1) to dismiss the Complaint, or alternatively under Rule 12(c) for judgment on the pleadings.[2]   *See* Def.'s Mot. (ECF No. 36).   Second, he moves to amend any pleadings and filings "to reference Plaintiff and her witness by their real names instead of by the pseudonym 'Jane Doe'" for the remainder of the case.   *Id.* at 1.

## DISCUSSION

### I.   Defendant's Rule 12 Motion

"To survive a Rule 12(c) motion" for judgment on the pleadings, "the plaintiff's complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021).[3]   "The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to

---

[2] Defendant has also styled his motion as one pursuant to Rule 12(b)(6), for failure to state a claim upon which relief can be granted.   Defendant has already answered the Complaint; he has thus waived his opportunity to assert a Rule 12(b)(6) motion.   His waiver makes no practical difference, however, because his properly asserted Rule 12(c) motion is analyzed under the same Rule 12(b)(6) standard.   *See Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).

[3] Unless otherwise indicated, in quoting cases all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

relief . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal conduct." *Id.*   The Court draws all reasonable inferences in favor of Plaintiff as the nonmoving party. *See Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 462 (2d Cir. 2019).

Reviewing a motion for judgment on the pleadings, a court considers "all documents that qualify as part of the non-movant's 'pleading,' including (1) the complaint *or* answer, (2) documents attached to the pleading, (3) documents incorporated by reference in or integral to the pleading, and (4) matters of which the court may take judicial notice." *Lively*, 6 F.4th at 306 (emphasis in original).   As Plaintiff is the non-movant, the Complaint—not the Answer—is the only pleading that the Court can consider.   And although Defendant has filed an affidavit attesting to the prejudice he could experience from defending against a sexual assault claim years after the fact, including difficulty gathering stale evidence or contacting witnesses, those attestations are not integral to the Complaint.   The Court therefore cannot consider Defendant's Answer, or his affidavit, as part of his Rule 12(c) motion. *See id.*[4]

**A.  *The Longer Statute of Limitations under the VGM Applies***

Turning to the merits of the Rule 12(c) attack, Defendant first argues the VGM claim should be dismissed as untimely.   New York City imposes a seven-year statute of limitations to bring a claim under the VGM. *See* N.Y.C. Admin. Code § 10–1105(a).   By contrast, the statewide Civil Practice Law and Rules ("CPLR") imposes a one-year statute of limitations for intentional torts such as assault and battery. *See* N.Y. CPLR § 215(3).   Plaintiff filed her case just a few days

---

[4] The Court declines to consider Defendant's materials by converting his motion into one for summary judgment under Rules 12(d) and 56, given that discovery is still ongoing and the parties agree that questions of fact remain unresolved. *See Gersbacher v. City of New York*, 134 F. Supp. 3d 711, 720 n.4 (S.D.N.Y. 2015).

shy of seven years after the alleged assault, so her case would only be timely under the longer limitations period provided by the VGM.[5]

Defendant contends that the CPLR preempts the VGM.  He relies on a single trial court case, *Cordero v. Epstein*, which held that the VGM's statute of limitations is a local law preempted by the state CPLR.  *See* 869 N.Y.S.2d 725, 730–31 (Sup. Ct., N.Y. County 2008).  But as Defendant concedes, *Cordero* does not bind this Court.  In fact, the First Department has expressly rejected *Cordero* and held that the CPLR does not preempt the VGM's statute of limitations.  *See Engelman v. Rofe*, 144 N.Y.S.3d 20, 24–26 (N.Y. App. Div. 1st Dep't 2021).  For one, the *Engelman* Court distinguished between the conduct targeted by each law, reasoning that "the legislative intent of the VGM was to create a civil rights remedy or cause of action such as in [the federal Violence Against Women Act], rather than to extend the statute of limitations for a particular class of assaults" as in the CPLR.  *Id.* at 25–26.  It also observed that local antidiscrimination laws are generally not preempted by state law in New York, and that "[t]he VGM's construct is consistent with the City's broad policing power to enact legislation to protect its residents from discrimination, including gender-related violence."  *Id.* at 25.  Thus, the First Department in *Engelman* rejected the same preemption argument that Defendant makes here.

Defendant nevertheless insists that this Court should defer to the trial court in *Cordero* rather than the appellate court in *Engelman*.  The Court disagrees, as that would get the order of judicial deference backwards.  Instead, the Court defers to the appellate court's holding that the VGM's seven-year statute of limitations is not preempted.  The First Department in *Engelman* is the only Appellate Division to have considered the issue, and there is no indication that New

---

[5] The Court has already concluded, and Defendant does not dispute, that Plaintiff's allegations are sufficient to state a claim under the terms of the VGM.  *See* Default Judgment Order at 9.

York's Court of Appeals would decide otherwise.  *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 48 (2d Cir. 2013) (instructing federal district courts to defer to state intermediate appellate courts unless there are "persuasive data" that the state's highest court would disagree).

Moreover, Defendant has provided no persuasive data to indicate that the First Department reached the wrong decision in *Engelman*.  His suggestion that the First Department overlooked principles of preemption law (that the lower court did not) is without merit.  To the contrary, *Engelman* rejected the exact argument that Defendant resurrects here: that the CPLR implicitly preempts the VGM, even if it does not do so expressly.  *See Engelman*, 144 N.Y.S.3d at 24 ("New York State has not evinced an intent to occupy the field with respect to the statute of limitations in this matter.").  The VGM has been on the books for over two decades since its passage in 2000, and Defendant has identified nothing that the state legislature has done during those decades— either expressly or implicitly—to preempt the VGM's statute of limitations or bring it under the ambit of the CPLR.

The VGM provides the relevant statute of limitations for Plaintiff's claim.  Plaintiff filed her claim within that seven-year limitations period.  Her claim is therefore timely.

**B.  *The VGM is Not Unconstitutional as Applied to Defendant***

Even if the VGM is not preempted outright by state law, Defendant argues the application of the seven-year statute of limitations to this case is unconstitutional as applied to him.[6]  He maintains that "[t]he key fact that distinguishes *Engelman* from the case at bar is that the only

---

[6] By contrast, Defendant does not challenge the facial constitutionality of the VGM.  That is, Defendant does not challenge the City Council's decision to extend the statute of limitations for at least *some* plaintiffs.  Legislatures, after all, have broad latitude to set limitations periods without offending due process.  *See Wilson v. Iseminger*, 185 U.S. 55, 63 (1902).

plaintiff who waited seven years minus one week to bring suit is the Plaintiff in this case." Def.'s Br. (ECF No. 38) at 6. As far as the Court can tell from Defendant's briefing, the basis for the Rule 12(b)(1) prong of his motion is as follows: because the VGM is unconstitutional as applied, the Court lacks a statutory basis for subject-matter jurisdiction.

Defendant cites no authority in support of his novel contention that a claim brought within a statute of limitations is somehow unconstitutional as applied. Instead, Defendant spends several pages of briefing discussing the standard of review for claims-revival statutes—an entirely different inquiry that asks whether defendants are denied justice when otherwise time-barred claims are *revived* by a statute. *See In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 89 N.E.3d 1227, 1243 (N.Y. 2017). It is unclear how this standard supports Defendant's argument. The VGM's seven-year limitations period was operative well before Plaintiff's claim arose. Consequently, Plaintiff's claim would not need "revival" because it never lapsed in the first place.

Thus, because the VGM is not unconstitutional as applied, and because the Court can otherwise derive jurisdiction from the parties' diversity of citizenship and the amount in controversy alleged, *see* 28 U.S.C. § 1332, Defendant's 12(b)(1) challenge fails.

## C. *The Defense of Laches is Premature*

In the end, Defendant's concerns about the VGM really seem to boil down to a laches defense. He contends that Plaintiff had no good reason to wait for almost seven years after the alleged sexual assault before commencing this action. This affirmative defense is premature and does not justify dismissal on the pleadings.

"Laches is a defense developed by courts of equity to protect defendants against unreasonable, prejudicial delay in commencing suit." *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 137 S. Ct. 954, 960 (2017). Under New York law, laches is an equitable

remedy to be applied at the discretion of the Court.  *See Busher v. Barry*, No. 14 Civ. 4322 (NSR), 2016 WL 2742428, at *2 (S.D.N.Y. May 10, 2016).  A defendant bears the burden of establishing this laches defense and must establish both (1) lack of diligence by the plaintiff in bringing suit, and (2) prejudice to the defendant.  *See Fed. Ins. Co. v. United States*, 882 F.3d 348, 365 (2d Cir. 2018); *Busher*, 2016 WL 2742428, at *2 (citing New York law).  As he can rely only on the allegations in the Complaint, Defendant has not proven either laches element at the Rule 12 stage.

To start, Plaintiff brought her claim within the seven-year statute of limitations, so she is presumed to have acted diligently.  Where, as here, "a limitation on the period for bringing suit has been set by statute, laches will generally not be invoked to shorten the statutory period." *Ikelionwu v. United States*, 150 F.3d 233, 238 (2d Cir. 1998).

The New York City Council's stated legislative reasons for enacting the VGM reinforce this presumption of diligent pleading.  The text of the VGM declares that victims of gender-motivated violence frequently face "serious physical, psychological, emotional and economic harm," as well as "a climate of condescension, indifference and hostility . . . ."  N.Y.C. Admin. Code § 10–1102.  This language suggests that the City Council intended the longer statute of limitations period to remedy hostility towards victims who require additional time to process trauma and bring claims forward.  *See also Breest v. Haggis*, 115 N.Y.S.3d 322, 330 (N.Y. App. Div. 1st Dep't 2019) (noting the City Council purposefully extended the VGM's statute of limitations beyond its federal analogue, the Violence Against Women Act).

Moreover, a laches defense generally requires discovery into the plaintiff's knowledge about the viability of her claim, making it ill-suited to resolution at the pleadings stage.  *See Hicks v. Leslie Feely Fine Art, LLC*, No. 1:20 Civ. 1991 (ER), 2021 WL 982298, at *10 (S.D.N.Y. Mar. 16, 2021) (citing *Lennon v. Seaman*, 63 F. Supp. 2d 428, 439 (S.D.N.Y. 1999) ("[A] ruling on the

defendant's defense of laches would necessarily involve a fact-intensive analysis and balancing of

equities that would require the Court to consider matters outside of the pleadings that are in

dispute.")).  It is not clear from the face of the Complaint if, or when, Plaintiff knew of the viability

of her VGM claim following the alleged assault; there is no mention of her contacting any

authorities or communicating with anyone about the events in question.  Nor, again, can the Court

consider Defendant's affidavit in assessing any prejudice from delay.  *See Lively*, 6 F.4th at 306.

Therefore, because questions of fact exist as to whether Plaintiff dallied in bringing her VGM

claim and whether Defendant was prejudiced as a result, the Court declines to apply the doctrine

of laches as an equitable remedy at this early stage of the litigation.

With his objections addressed, Defendant's Rule 12 motion for dismissal and/or judgment

on the pleadings is denied.

## II.     Defendant's Motion to Amend the Pleadings to Disclose Plaintiff's Real Name

Defendant's other motion seeks to amend the pleadings to disclose Plaintiff's real name,

as well as the real names of any pseudonymized witnesses.  Defendant contends that allowing

Plaintiff to litigate this case under the pseudonym "Jane Doe" will disadvantage him.

Federal Rule of Civil Procedure 10(a) requires a complaint to name all parties.  "This

requirement . . . serves the vital purpose of facilitating public scrutiny of judicial proceedings and

therefore cannot be set aside lightly."  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188–89

(2d Cir. 2008).  The Court may grant an exception to this disclosure default if a plaintiff has a

"substantial privacy interest which outweighs the customary and constitutionally-embedded

presumption of openness in judicial proceedings."  *Id.* at 189.  To that end, the Second Circuit has

formulated a list of ten factors[7] that a district court should consider in determining whether to

permit a plaintiff to proceed under a pseudonym. *Id.* at 190.  The Court need not analyze the

factors in any particular way so long as it clearly "balanced the interests at stake in reaching its

conclusion." *Id.* at 189.

In sum, the Court finds that the factors on each side roughly balance against one another,

leaving the Court to conclude that a middle path—continued sealing of Plaintiff's identity but with

a protective order for discovery—is appropriate.  But to be clear, the Court's decision does not

resolve the pseudonym issue for all time.  Because the prejudice against Defendant will likely

increase at trial, the issue can be revisited at that point.

**A.  *Factors Weighing in Favor of Plaintiff's Use of a Pseudonym***

Plaintiff has an undeniable privacy interest given the personal sensitivity of her allegations.

Protecting "the identity of a sexual assault victim" is "an important and recognized basis to limit

public access" to judicial documents.  *Kemp v. North*, No. 20 Civ. 9121 (RA) (SN), 2021 WL

1512712, at *2 (S.D.N.Y. Apr. 15, 2021).  Plaintiff's allegations are both intimate and serious.

*See* Compl. ¶¶ 14–22.  And in two sworn declarations, Plaintiff has recounted embarrassment,

---

[7] The factors are: "(1) whether the litigation involves matters that are highly sensitive and of a personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff." *Sealed Plaintiff*, 537 F.3d 190.

depression, and suicidal thoughts resulting from her alleged episode with Defendant. *See* Decl. of Jane Doe (ECF No. 20-3) ¶¶ 20–25 ; Decl. of Jane Doe (ECF No. 43-1) ¶¶ 10–14. Additionally, unlike in cases where unsealing would not change much because a plaintiff's identity is already public, there is no indication that anyone besides Defendant knows who Plaintiff's real identity. Plaintiff maintains she has made no public statements about this case and even her close family and friends are unaware of her allegations against Defendant. *See* Decl. of Jane Doe (ECF No. 43-1) at ¶ 6.

Even as it weighs heavily in favor of a pseudonym, the sensitivity of Plaintiff's allegations does not end the analysis. *See Doe v. Freydin*, No. 21 Civ. 8371 (NRB), 2021 WL 4991731, at *2 (S.D.N.Y. Oct. 27, 2021) (collecting cases). And her supporting claim that she could face harm if her name were publicly disclosed is speculative. It is self-evident that the risk of retaliation from Defendant himself would not increase because Defendant "already know[s]" Plaintiff's real name and identity. *Id.*

Plaintiff, in turn, suggests she is "less concerned about retaliation from Defendant himself, but rather, from members of the general public." Pl.'s Opp'n Br. (ECF No. 44) at 15. Specifically, Plaintiff claims she received a mysterious telephone call from an unknown number on the morning of September 30, 2021. After Plaintiff answered, a voice (apparently female) said "[w]e know who you are" in a threatening tone. Plaintiff immediately hung up. *See* Decl. of Jane Doe (ECF No. 43-1) at ¶ 3; *see also* Call Log (ECF No. 43-2) at 1.

Courts have typically found concerns about public retaliation in the abstract, without more, insufficient to warrant a pseudonym. *See, e.g.*, *Freydin*, 2021 WL 4991731, at *2; *Doe v. Weinstein*, 484 F. Supp. 3d 90, 95 (S.D.N.Y. 2020); *Doe v. Skyline Automobiles Inc.*, 375 F. Supp. 3d 401, 406 (S.D.N.Y. 2019). And one phone call from an unidentified source does not persuade

the Court that Plaintiff would face public retaliation if her name were disclosed.  *See Doe v. Townes*, No. 19 Civ. 8034 (ALC) (OTW), 2020 WL 2395159, at *4 (S.D.N.Y. May 12, 2020) (noting a risk of retaliation exists "where there is a history of *substantiated* prior action" against the plaintiff) (emphasis added).  Even assuming the anonymous caller intended to convey a threat, there is no evidence connecting the call to Defendant, the allegations, or anything specific to this case.[8]  Nor would public disclosure of Plaintiff's name increase the risk from this anonymous caller; whoever they were, they already have Plaintiff's personal phone number.  *See Doe v. Shakur*, 164 F.R.D. 359, 362 (S.D.N.Y. 1996) (finding allegation that plaintiff had been subjected to death threats insufficient for sealing because she had not "explained how or why the use of her real name in court papers would lead to harm, since those who presumably would have any animosity toward her already know her true identity").  Thus, the anonymous call fails to corroborate a likelihood of harm beyond mere speculation.

Plaintiff further claims that disclosing her name could injure her psychologically.  She avers in her declaration "that if the privacy and security of proceeding under Jane Doe were eliminated, my self-esteem would be negatively impacted, my work performance would suffer, and the shame of my real name attached to the words 'rape victim' would be trauma-inducing."  Decl. of Jane Doe (ECF No. 43-1) at ¶ 14.  To be sure, "[t]he risk of psychological injury stemming from identification is a cognizable harm that can serve as a legitimate basis for proceeding anonymously."  *Doe v. Solera Capital LLC*, No. 18 Civ. 1769 (ER), 2019 WL 1437520, at *4 (S.D.N.Y. Mar. 31, 2019).

---

[8] Nor has Plaintiff explained how the timing of the call plausibly fits into the timeline of this case. The only event on the docket that was close in time to the call was the Court's vacatur of the default judgment—to Defendant's benefit, and on the parties' consent—six days beforehand, on September 24, 2021.

11

Yet Plaintiff's predictions of psychological harm are too amorphous to tilt decidedly in favor of a pseudonym. Plaintiff has not explained how revealing her name would cause unique harm beyond the trauma that she already bears from the underlying allegations. *See Rapp v. Fowler*, 537 F. Supp. 3d 521, 528–29 (S.D.N.Y. 2021) (recognizing the harm of post-traumatic stress disorder for a victim who confronts a sexual assailant but denying a motion to proceed pseudonymously because the plaintiff's declarations failed to provide "any sense of the severity of any consequences of a retriggering" beyond generalized anxiety and depression); *see also Weinstein*, 484 F. Supp. 3d at 94–95 ("The potential injury alleged must be more than mere embarrassment or social stigmatization."). Nor has Plaintiff "submitted any corroborating medical testimony" identifying psychological injury that could arise from disclosing her name. *Freydin*, 2021 WL 4991731, at *2; *cf. Doe v. Bloomberg L.P.*, 154 N.Y.S.3d 766, 767 (N.Y. App. Div. 1st Dep't 2021) (finding affidavits from treating psychologist and psychiatrist to be "compelling").

At bottom, "[d]espite sympathizing with Plaintiff," the Court recognizes that "[a]llowing Plaintiff to proceed anonymously for these reasons would be to hold that nearly any plaintiff alleging sexual harassment and assault could proceed anonymously." *Townes*, 2020 WL 2395159, at *4. Such a "blanket holding" would, in effect, allow the exception to swallow the rule. *See id.*

**B.** *Factors Weighing in Favor of Public Disclosure of Plaintiff's Identity*

Balanced against Plaintiff's privacy interest is the public's interest in open court proceedings. The public has countervailing considerations here: it must deter sexual assault through open proceedings, while at the same time "protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes." *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 196 (E.D.N.Y. 2006). Regarding the latter, Defendant acknowledges that he faces allegations from dozens of women in total, *see* Def.'s Br. at 1, including at least one civil lawsuit

brought by a woman whose identity is public, *see* Verified Complaint, *Ashworth v. Gooding, Jr.* (ECF No. 20-4).  Another woman—also using her real name—has filed a declaration in this action accusing Defendant of sexual assault.  *See* Decl. of Remona Biddle-Jackson (ECF No. 20-5). Given these widespread and public accusations, it seems unlikely that additional alleged victims of Defendant would hesitate to come forward if Plaintiff's name is disclosed.

Sealing is also more favored in three specific situations not presented here.  First, sealing is more favored where a plaintiff is particularly young and vulnerable to public scrutiny.  Plaintiff acknowledges she was already an adult when the alleged assault occurred.  *See* Pl.'s Opp'n Br. at 23.  Second, sealing is more favored where an anonymous plaintiff challenges the government rather another private party. "In private civil suits, courts recognize there is a significant interest in open judicial proceedings since such suits do not only advance the parties private interests, but also further the public's interest in enforcing legal and social norms." *Rapp*, 537 F. Supp. 3d at 532.  Plaintiff's lawsuit is against another private individual.  Third, sealing is more favored where a suit raises purely legal, rather than factual, issues.  Plaintiff's allegations of sexual assault are factual in nature.  None of these specific situations counsel in favor of Plaintiff's continued use of a pseudonym.

### C.  *The Dynamic Factor: Prejudice against Defendant*

Also weighing against a pseudonym—and likely growing in weight as this case continues—is the prejudice Defendant faces from defending this sexual assault case against a "Jane Doe" Plaintiff.  The imbalance arises where Defendant must "defend himself publicly while plaintiff could make her accusations from behind a cloak of anonymity." *Shakur*, 164 F.R.D. at 361.  This imbalance can affect discovery and settlement negotiations.  For instance, "a plaintiff may hold out for a larger settlement when the plaintiff knows that the defendant faces reputational

risk not reciprocated by the plaintiff." *Doe v. Zinsou*, No. 19 Civ. 7025 (ER), 2019 WL 3564582, at \*7 (S.D.N.Y. Aug. 6, 2019).  And the Court recognizes that prejudice would substantially increase at trial, where anonymity could affect witness confrontation, evidence presentation, and jury perception. *See Doe v. Delta Airlines, Inc.*, 310 F.R.D. 222, 225 (S.D.N.Y. 2015), *aff'd*, 672 F. App'x 48 (2d Cir. 2016).

However, at least during this pre-trial stage, Defendant overstates the prejudice from Plaintiff's anonymity.  Defendant already knows Plaintiff's real identity, so he is not "greatly prejudiced in his ability to conduct discovery." *Townes*, 2020 WL 2395159, at \*16.  Other solutions could further reduce that prejudice at this stage of litigation.  Plaintiff could "seek less drastic remedies than blanket anonymity, such as redactions to protect particularly sensitive information, or a protective order." *Weinstein*, 484 F. Supp. 3d at 98.

To that end, the Court shall implement a protective order for use during the discovery period—thereby reducing the prejudice against Defendant in his search for evidence and witnesses. The parties shall submit a draft order to Magistrate Judge Gorenstein for approval which permits the limited disclosure of Plaintiff's identity for discovery purposes.

*     *     *

The myriad *Sealed Plaintiff* factors do not weigh definitively towards sealing or unsealing in this case, leaving the Court skeptical that Plaintiff can overcome the presumption of public disclosure in the long run.  But the Court remains mindful that disclosure is a one-way street: once Plaintiff's identity is revealed, it will be impossible to conceal again.  It is also a matter that can be revisited prior to trial. *See Sealed Plaintiff*, 537 F.3d at 190 (noting prejudice from permitting a pseudonym might "differ[] at any particular stage of the litigation").  Other courts have employed this incremental approach. *See, e.g.*, *Doe v. Hobart & William Smith Colleges*, No. 6:20 Civ. 6338

(EAW), 2021 WL 1062707, at *4 (W.D.N.Y. Mar. 19, 2021); *Lawson v. Rubin*, No. 17 Civ. 6404

(BMC) (SMG), 2019 WL 5291205, at *2 (E.D.N.Y. Oct. 18, 2019).

For the present, the Court will continue allowing Plaintiff to proceed under a pseudonym

while mitigating prejudice during discovery with a protective order.

## CONCLUSION

Defendant's motion to dismiss, or alternatively for judgment on the pleadings, is **DENIED**.

Defendant's motion to amend the pleadings to disclose the real names of Plaintiff and any

witnesses is **DENIED**, without prejudice as to its renewal after the close of discovery. The parties

are **ORDERED** to submit a draft protective order to Judge Gorenstein by May 4, 2022. If the

parties are unable to agree to the terms of that protective order, the Court respectfully refers the

matter to Judge Gorenstein for the issuance of a protective order consistent with the principles

outlined in this Opinion, and for an adjustment of discovery deadlines, if necessary.

The Clerk of Court is directed to close the motion at ECF numbers 36 and 37.


Dated: New York, New York            SO ORDERED
       April 13, 2022

                                     *[signature]*
                                     _____
                                     HONORABLE PAUL A. CROTTY
                                     United States District Judge


15