

**NISAR LAW GROUP, P.C.**
One Grand Central Place
60 East 42nd Street, Suite 4600
New York, NY 10165

**Casey J. Wolnowski,** *Senior Managing Counsel*
Email: cwolnowski@nisarlaw.com
Phone: (646) 889-1007
Fax: (516) 604-0157

December 22, 2022

<u>*Via ECF*</u>
Hon. Hon. Paul A. Crotty, U.S.D.J.
U.S. District Court (S.D.N.Y.)
500 Pearl St.
New York, NY 10007-1312

      **Re:**    **Pre-Motion Letter Pursuant to Individual Practices Paragraph 3(D)**
               *Doe v. Gooding, Jr.* **(S.D.N.Y. 1:20-cv-06569-PAC-GWG)**

Your Honor,

      This letter is submitted on behalf of the plaintiff, a woman proceeding pseudonymously as "Jane Doe" ("Plaintiff"), in the above-captioned matter. I write this letter pursuant to so much of Magistrate Judge Gorenstein's directives on November 1, 2022, November 28, 2022, and December 16, 2022 (see ECF #'s 93, 97, 101) seeking permission to make a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

*Facts and Record Evidence*

      Plaintiff relies on the proof developed in the record. Specifically, at Plaintiff's deposition, she testified that Defendant Cuba Gooding Jr. ("Defendant") raped her on August 24, 2013. (Plaintiff's deposition transcript ("Pl. Tr."), at 175:10-12.) To this end, she testified she met Defendant at a restaurant/ lounge in the evening of August 24, 2013 and thereafter left the VIP section of that lounge to accompany defendant to the Mercer Hotel (Pl. Tr., at 172:20-173:4) for the purpose of getting drinks. (Pl. Tr., at 263:19-21.) When she met Defendant, he was "drunk." (Pl. Tr., at 257:11-17.) They took a cab to The Mercer, and upon arrival, Defendant advised her to walk into the lobby by herself so he could avoid the paparazzi. (Pl. Tr., at 262:4-10.) Upon her entering the hotel lobby, Defendant rejoined her in "under two minutes." (Pl. Tr., at 264:13-18.) When Defendant approached Plaintiff, he told her that he "needed to change [his clothes]." (Pl. Tr., at 265:4-6.) Plaintiff accompanied Defendant upstairs to his hotel room because she "didn't think anything would happen." (Pl. Tr., at 266:25-267:7.)

      Once they entered Defendant's hotel room, Defendant "put on music." (Pl. Tr., at 271:21-23.) Plaintiff sat down on the bed and Defendant began undressing in front of her. (Pl. Tr., at 273:14-7.) Plaintiff "froze" in response to him doing this. (Pl. Tr., at 273:18-21.) Defendant then sat down next to her, pulled her left breast out of her dress, and digitally penetrated her under her dress. (Pl. Tr., at 274:19-275:3.) As he was doing this, Plaintiff told him to stop. (Pl. Tr., at 278:11-12.) Then, Defendant removed Plaintiff's underwear, pinned her arms down next to her,

and penetrated Plaintiff's vagina with his penis. (Pl. Tr., at 284:22-285:2; 285:16-19; 287:4-10; 287:20-23.) Prior to Defendant inserting his penis into Plaintiff's vagina, she told him to stop, but he didn't. (Pl. Tr., at 286:24-287:3.) The intercourse lasted "not long," "a few minutes" and during the first 30 seconds of this encounter, Plaintiff told Defendant "'no' multiple times." (Pl. Tr., at 289:19-290:13.)

Following ejaculation, Plaintiff lay on the bed "frozen"; Defendant "was in the bathroom or somewhere." (Pl. Tr., at 293:11-19.) Defendant came out of the bathroom and got back on the bed. Plaintiff tried to roll over and crawl off the bed, but Defendant grabbed her hips with both hands (Pl. Tr., at 298:21-299:6), positioned himself behind her with both hands, and forcibly put his penis in her anus. (Pl. Tr., at 300:3-301:10.) She tried to move her body to prevent entry. (Pl. Tr., at 300:22-301:3.) Like the first encounter, Plaintiff froze. (Pl. Tr., at 302:11-23.) This encounter lasted "a little bit longer than a few minutes." (Pl. Tr., at 305:2-3.) Once Defendant ejaculated a second time, Defendant "rolled over [onto the bed] and just laid there." (Pl. Tr., at 305:15-19.) Defendant then fell asleep. (Pl. Tr., at 305:24-25.)

Upon Defendant falling asleep, Plaintiff gathered up her dress, put herself together in the bathroom, then left. (Pl. Tr., at 308-310.)

There is also uncontroverted evidence in the record that Defendant has used the tactic of telling women that he needed to change his clothes and asking them to accompany him to his hotel room in an effort to lure these women so as to sexually assault them. To this end, Defendant's former personal assistant testified that Defendant told him explicitly that he used this method and upon arriving at the hotel room, he undressed to being fully nude to gauge the woman's interest. The personal assistant also testified that on numerous instances, women who accompanied Defendant to his hotel room had been made uncomfortable with Defendant's actions, in that, upon arriving at the hotel room, Defendant either groped them, kissed them without their consent, or forced himself upon them sexually. In fact, on one particular occasion, on the set of filming the movie 'Pearl Harbor,' a woman alleged to him that Defendant had forced her to have non-consensual sex with him after he tricked her to come to his hotel room under the pretext that Defendant merely had to change his clothes.

He also testified that the main focus of his job was that of an "evening fixer" when Defendant groped or touched women in a sexual manner without their consent (which he testified was something that happened "regularly"). To this point, sworn testimony from four women in this case demonstrates that Defendant engaged in various acts of sexual assault against them including Defendant grabbing their private parts without consent, attempting digital penetration without consent, ripping a woman's clothing while trying to digitally penetrate her anus, and directing a woman to urinate into his mouth. Further, during the pendency of this case, Defendant pleaded guilty in open court to forcibly touching a woman's breast without her consent and forcibly kissing another woman without her consent, admitting that these acts were committed without their permission or authority and for Defendant's own personal gratification.

### *Plaintiff is Entitled to Summary Judgment*

With respect to legal liability, Plaintiff has raised one cause of action in this case—to

wit—a claim pursuant to New York City's Victims of Gender-Motivated Violence Protection Law, New York City Administrative Code § 10-1101, *et seq.* (the "VGM"). In the case of *Breest v. Haggis*, the N.Y. Supreme Court, Appellate Division, First Department conclusively stated that "[r]ape and sexual assault are, by definition, actions taken against the victim without the victim's consent. Without consent, sexual acts such as those alleged [in that case] are a violation of the victim's bodily autonomy and an expression of the perpetrator's contempt for that autonomy. Coerced sexual activity is dehumanizing and fear-inducing. *Malice or ill will based on gender is apparent from the alleged commission of the act itself.* Animus inheres where consent is absent." *Breest v. Haggis*, 180 A.D.3d 83, 94 (N.Y. App. Div. 1st Dept. 2019) (emphasis added).

Here, Plaintiff testified at her deposition that she was caused to suffer sexual assaults (rape) at the hands of Defendant. There is also significant and detailed evidence in the record demonstrating a pattern and practice of the use of a methodology of trickery to isolate a woman from her group for the purposes of sexual exploitation (just like what happened to Plaintiff), as well as sexual exploitation committed by Defendant that didn't utilize trickery. As the Court is probably aware, pattern and practice evidence may be utilized in summary judgment motion practice for the purpose of substantiating relevant facts. *See generally Eymer v. Ground Round*, 913 F. Supp. 693, 702 (N.D.N.Y. 1996); *Welbilt Appliance, Inc.*, 840 F. Supp. 11, 14 (E.D.N.Y. 1994).

Plaintiff and counsel thank the Court for its consideration of her request.

Respectfully submitted,

Casey Wolnowski, Esq.
*Attorney for Plaintiff*

cc:   Defendant's counsel (*via ECF*)