# SAPONE & PETRILLO, LLP

| | |
|---|---|
| <u>MANHATTAN</u> | <u>LONG ISLAND</u> |
| 40 Fulton Street, 17th Floor | 1103 Stewart Avenue, Suite 200 |
| New York, New York 10038 | Garden City, New York 11530 |
| Telephone: (212) 349-9000 | Telephone: (516) 678-2800 |
| Facsimile: (347) 408-0492 | Facsimile: (516) 977-1977 |
| E-mail: ed@saponepetrillo.com | E-mail: bill@saponepetrillo.com |

June 1, 2023

**BY ECF**

The Honorable Paul A. Crotty
United States District Court for the
Southern District of New York
500 Pearl Street, Courtroom 14C
New York, NY 10007-1312

      Re: *Jane Doe v. Cuba Gooding, Jr.*, No. 1:20-cv-06569-PAC-GWG

Dear Judge Crotty:

  In advance of the final pre-trial conference this afternoon, we write to reply in further support of Defendant Cuba Gooding, Jr.'s motion *in limine*, in particular to address Plaintiff's arguments regarding the introduction of evidence regarding Plaintiff suffering a prior sexual assault and the alleged denigration of Plaintiff by Mr. Gooding, Jr.'s *former* lawyer should be considered by the Court when conducting the 404(b)/403 balancing test regarding the admissibility of testimony from one or more of the four other women.

> **The Court Should Permit Defendant to Examine Plaintiff**
> **<u>Regarding Her Actions Following the Sexual Assault She Suffered in 2014</u>**

  As discussed in Defendant's motions *in limine*, ECF Doc. Nos. 136, 137, and 138, and in opposition to Plaintiff's motion *in limine*, ECF Doc. Nos. 141, 142, Plaintiff's deposition testimony that as a registered nurse she knew to take herself immediately to the hospital following the 2014 sexual assault by a man who did not use a condom -- when contrasted with her rejoining her friend for more drinks at Le Souk immediately after allegedly being raped by Defendant – undermines her claim that Mr. Gooding, Jr. raped her.  That is the principal reason we wish to cross examine Plaintiff about it.  It is not to challenge her account of the 2014 sexual assault; it is not to prove she is promiscuous; it is certainly not to embarrass or shame

her.  There is no shame in being the victim of sexual assault and Plaintiff's argument that our motion is nothing but a "blatant attempt" to shame her is incorrect.  We have no need to get into the lurid details of Plaintiff's sexual assault in 2014 either; rather, just the basic facts as a predicate for what she did next.

In opposition, Plaintiff argues, "first and foremost," that Plaintiff's visit to the hospital following the 2014 sexual assault has no bearing on the relevance of her failure to seek medical intervention after Mr. Gooding, Jr. allegedly raped her, because "[c]ontrary to Defendant's representation of the testimony, Plaintiff testified at her deposition that at the time of the May 2014 sexual interactions, she did not believe it was nonconsensual." *see* ECF Doc. No. 144 at 15.  This misstates the record.  At her deposition, Plaintiff testified *unequivocally* that at the time of the May 2014 sexual assault she understood that the incident was "non-consensual." *See* Doc. No. 137-1 at 182-83, 186-87, 191-92.  For example, at various points in the deposition, Plaintiff gave these answers in response to questions about the 2014 sexual assault:

> Q. You reported that after you said no, the male, nonetheless, engaged in sexual intercourse with you, as well, correct?
>
> A. Yes.
>
> Q. And that was nonconsensual, correct?
>
> A. Correct.

*Id.* at 186-87 (emphasis added).  And again:

> Q. Nine months after the alleged incident here where you say Mr. Gooding, Jr. raped you, you claim that another man, in 2014, had non-consensual intercourse with you, right?
>
> A: Yes.

Plaintiff also makes the rather strange and illogical argument that while she had reason to go to the hospital for testing for sexually transmitted diseases following the 2014 sexual assault – it was because she knew the sexual history of her assailant, she did not have the same reason to go to the hospital following the alleged sexual assault by Mr. Gooding, Jr., because she did not know his sexual history.  *See* ECF Doc. 144 at 15.  So the Court is clear, Plaintiff gave these answers to questions at the deposition:

> Q. The reason you asked for testing for STDs is because you didn't know these men, right?
>
> A. No, I knew them.
>
> Q. You didn't know their sexual history?

> A. I knew their sexual history.
>
> Q. Did you know every sexual partner they had been with until that man put his penis inside your vagina without your consent?
>
> A. I knew some of them.
>
> Q. **You didn't know all of them?**
>
> A. **No.**
>
> Q. **You were concerned that you might catch an STD, right?**
>
> A. **Yes.**
>
> Q. **That's why you walked over to the hospital, in part, so you could get examined just in case he may have given you an STD, right?**
>
> A. **Correct.**

*See* Doc. No. 137-1 at 187-88 (emphasis added).

> Q. Did you know any of Mr. Gooding, Jr.'s sexual history?
>
> A. No.
>
> Q. So in the 2014 incident, you walked over to the hospital and you got tested, right?
>
> A. Yes.

*Id.* at 192-94 (emphasis added). Clearly, the basis for Plaintiff getting tested for STDs in May 2014 was her concern of having contracted an STD -- a concern predicated on not knowing her assailants' complete sexual history and on perhaps recognizing something troubling within that part of their sexual history that she did know. Plaintiff's failure to seek medical intervention following the alleged sexual assault by Mr. Gooding, Jr., had the assault really happened, would have given her the concern about catching an STD as with the 2014 sexual assault.

     Federal Rule of Evidence 412 is titled "Sex-Offense Cases: The Victim's Sexual Behavior or Predisposition." The first sentence of the Rule confirms that its purpose is to place limits on eliciting evidence, in a sexual assault case, "(1) offered to prove that a victim engaged in other sexual behavior; or (2) evidence offered to prove a victim's sexual predisposition."

Defendant does not seek to offer evidence under either of these subsections. The victim of rape or other sexual assault has not "engaged in sexual behavior" and we are certainly not seeking to argue that Plaintiff has a predisposition to engage in any kind of sexual conduct. As Plaintiff has argued in her discussion of the New York City Victims of Gender-Motivated Violence Protection Law, N.Y.C. Administrative Code § 10-1101 *et seq.*, rape is a "crime of violence" and is not about sexual behavior. We are confident that Plaintiff would cry foul if we were to say that according to the allegations in the Complaint, Plaintiff is alleging that she "engaged in sexual behavior" with Mr. Gooding, Jr. That an individual was raped does not impute any type of bad reputation on the victim or otherwise infuse sexual innuendo. *See* Fed. R. Evid. 412, Advisory Committee Notes to 1994 Amendments.

Plaintiff has not cited to a single case where the court rejected consideration of a prior sexual *assault* on the grounds that it violated the protections of Rule 412.[1] Indeed, Defendant is unaware of any federal court even adjudicating the specific argument made here -- that a prior sexual *assault* does not constitute "sexual behavior" under Rule 412, or is suggestive of "sexual disposition" for purposes of admitting evidence at the liability stage of a civil case.

Here, evidence of Plaintiff's state of mind and actions immediately following the May 2014 sexual assault impeaches her credibility with respect to the core issue in this case -- her allegation that she was sexually assaulted by Defendant in 2013. As a registered nurse who had experience treating emergency room patients, *see* ECF Doc. No. 137-1 at 220-21, after the May 2014 sexual assault, Plaintiff had the wherewithal to get herself tested for STDs, particularly where there were questions and concerns about her assailants' sexual history. *Id.* at 187-88, 194. Yet, immediately following the alleged sexual assault by Defendant, who allegedly did not use a condom and whose sexual history she did not know, Plaintiff did something quite different. Rather than take herself to the hospital for examination and testing, Plaintiff returned to the lounge where she had met Defendant earlier that night and rejoined her friend for drinks. *See id.* at 193-96. The juxtaposition between that assault and what Plaintiff alleges here clearly does not implicate the concerns about innuendo, sexual behavior, or promiscuity inherent in Rule 412. In any event, the probative value of this evidence -- to prove not a sexual predisposition or a reputation, but Plaintiff's intent and state of mind when it comes to sexual assault -- clearly substantially outweighs the danger of any harm or unfair prejudice to Plaintiff. *See* Fed. R. Evid. 412(b)(2).

Lastly, Plaintiff fails to address any of the case law cited by Defendant whereby Rule 412(b)(2) permitted the introduction of evidence regarding prior instances of sexual assault in order to challenge the causation of emotional distress and to highlight alternate sources of Plaintiff's claimed emotional distress and otherwise to rebut the alleged causation of damages.

---

[1] Indeed, the only case Plaintiff does cite, *United States v. Roman*, 884 F. Supp. 124, 126 (S.D.N.Y. 1995), involved not a victim's prior sexual assault, but a criminal defendant seeking to admit a paternity test for the purpose of implicating the victim's sexual promiscuity and making false claims in the past with him.

Rather, Plaintiff asserts without any foundation that there is no evidence that the May 2014 incident has caused Plaintiff any emotional distress and simply shrugs off the notion of alternate sources of emotional distress as "speculative." *See* ECF Doc. 144 at 17. To the contrary, Plaintiff's complaint and deposition testimony discuss her emotional distress and desire for therapy. *See* ECF Doc. No. 1 (Complaint) at 7 and ¶¶ 27, 28; ECF Doc. 137-1 at 164, 339-41. Plaintiff's testimony included her thought that she "deserved" the May 2014 sexual assault and her eventual recognition that the incident could constitute rape. ECF Doc. 137-1 at 184, 200, 201. Plaintiff has thus necessarily placed the causation of her emotional distress at issue, including any sexual assault that may have caused or otherwise contributed to it.

For these reasons, evidence regarding the May 2014 sexual assault should be admitted.

### The Court Should Not Consider Statements Purportedly Made By Defendant's Counsel of Choice

Plaintiff argues, without any basis or explanation, that one factor the Court should consider in analyzing the admissibility under Rule 404(b) of the testimony of four women -- Remona Biddle Jackson, Kelsey Harbert, Shannon Lunsford, and Elizabeth Guerra -- who have alleged that Defendant inappropriately touched them is "Defendant's desire and willingness to use his celebrity and public platform as a cudgel to attempt to shame, embarrass, attack and otherwise silence female accusers." This argument should be flatly rejected. *See* ECF Doc. No. 144 at 11.

First, as support for Plaintiff's claim that Defendant used his celebrity and public platform to "shame, embarrass, attack and otherwise silence female accusers," Plaintiff relies in large part on statements purportedly made by "Gooding Jr.'s attorney," and "Defendant's attorney['s]" purported launching of the "#NotMe Movement" in response to additional women making claims of inappropriate conduct by Defendant. *Id.* at 10-11. What Plaintiff left out is that the "attorney" to whom she referred, is Plaintiff's *former* attorney in proceedings in New York State, not the counsel of record here. Plaintiff's motive in referring to the purported statements and actions of Defendant's former attorney is clear: to malign Defendant's *current* attorney before this Court. Ironically, this is the very thing Plaintiff sought to prevent Defendant from purportedly doing in that portion of her motion *in limine* seeking to exclude comments and cross-examination regarding plaintiff's counsel of choice. *See* ECF Doc. No. 134. As Plaintiff herself has argued, such "[p]ersonal attacks on a party's counsel are 'reprehensible' and 'detract from the dignity of judicial proceedings.'" *Id.* at 9 (quoting *United States v. Xiong*, 262 F.3d 672, 675 (7th Cir. 2001)); *see also Allen v. Royce*, No. 19-CV-3672 (RPK), at *9 (E.D.N.Y. Jan. 13, 2022)("[A]ttacks on the credibility or motives of defense counsel are not permissible."). For this reason alone, Plaintiff's argument should be rejected.

Second, Plaintiff offers no explanation as to how Defendant's purported "attempt to shame, embarrass, attack and otherwise silence female accusers further *tilts this Rule 404 inquiry in favor of allowing these four women to testify*." *See* ECF Doc. No. 144 at 11

(emphasis added).  Nothing in Rule 404 permits consideration of anything other than whether the proponent of "other act" evidence is seeking to admit it for a "permitted use."  *See* Fed. R. Evid. 404(b)(2).

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in both the Memorandum of Law in Support of Defendant's Motions *in Limine* (ECF Doc. No. 138) and Cuba Gooding, Jr.'s Omnibus Memorandum of Law in Opposition to Plaintiff's Motions *in Limine* (ECF Doc. No. 143), Defendant respectfully requests that the Court grant Defendant's motions *in limine*, and issue an order (1) precluding Plaintiff from presenting any evidence relating to Defendant's purported interactions with Remona Biddle-Jackson, Natasha Ashworth, Kelsey Harbert, Shannon Lunsford, and Jane Doe #2; (2) precluding Plaintiff from presenting any evidence relating to the purported tasks, experiences, and observations of Joe Eckardt; and (3) permitting Defendant to present evidence relating to an incident of sexual assault that Plaintiff experienced after the incident alleged in the Complaint.

Respectfully submitted,

*/s/ Edward V. Sapone*
Edward V. Sapone (ES-2553)
Sapone & Petrillo, LLP
40 Fulton Street, 17th Floor
New York, New York 10038
Telephone:    (212) 349-9000
ed@saponepetrillo.com

*Attorneys for Defendant Cuba Gooding, Jr.*

cc:    Casey J. Wolnowski, Esq.
       *Counsel to Plaintiff Jane Doe*